WILLIAM W. GALLOWAY, Duly Elected and Acting Treasurer of Clark County, a Political Subdivision of the State of Nevada, Appellant, v. ROBERT I. TRUESDELL, Respondent.

No. 5173

January 5, 1967 422 P.2d 237

*Edward G. Marshall,* District Attorney, *John A. Porter,* Chief Civil Deputy District Attorney, of Las Vegas, for Appellant.

*Mendoza, Foley and Garner,* of Las Vegas, for Respondent.

## OPINION

By the Court, CRAVEN, D. J.:

The question presented for determination on this appeal is the constitutionality of Section 122.070 of the Nevada Revised Statutes, which provides as follows:

"122.070 Licensed, ordained ministers may solemnize marriages; certificates of permission to perform marriages; issuance, revocation; temporary replacements.

"1. Any licensed or ordained minister in good standing within his denomination, whose denomination, governing body and church, or any of them, are incorporated or organized and established in the State of Nevada, may join together as husband and wife persons who present a marriage license obtained from any county clerk of the state, if such minister first obtains a certificate of permission to perform marriages as provided in

this section. The fact that a minister is retired shall not disqualify him from obtaining a certificate of permission to perform marriages if, prior to such retirement, he had active charge of a congregation within this state for a period of at least 3 years.

"2. Any application for such certificate shall be filed by the minister with the judge of the district court of the county in which such minister resides, and shall contain information showing the date of licensure or ordination, or both, of the minister, the name of the denomination, governing body and church, or any of them, with which he is affiliated. Each application shall be accompanied by a copy of the denominational standing of such minister, a copy of which the district judge shall file with the secretary of state.

"3. For the purpose of determining the qualifications of any minister who has filed an application for a certificate, the district judge with whom such application has been filed may request that:

"(a) The congregation of such minister furnish any evidence which the judge considers necessary or helpful, and the congregation shall furnish such evidence.

"(b) The district attorney and the sheriff conduct an investigation of the background and present activities of such minister.

"4. If the judge of the district court approves an application, he shall notify the secretary of state of such approval within 10 days thereafter. After receipt of such notification, the secretary of state shall immediately certify the name of such minister to each county clerk and county recorder in the state.

"5. A certificate of permission shall be issued only for the period of July 1 to June 30, inclusive, and if issued after July 1 shall be valid only until the following June 30. All certificates may be renewed annually.

"6. If any minister to whom a certificate of permission has been issued severs ties with his congregation or moves from the county in which his certificate was issued, the certificate shall expire immediately upon such severance or move, and the trustee, warden or other officer of the congregation authorized to speak for it shall, within 5 days following the severance or move, give written notice of the fact of such severance or move to the district judge who issued the certificate.

"7. Any district judge who has issued a certificate of permission to a minister may revoke such certificate for good cause shown after hearing.

"8. If the certificate of any minister is revoked as provided

in subsections 6 and 7, the district judge shall inform the secretary of state of such fact, and the secretary of state shall immediately remove the name of such minister from the list and shall notify each county clerk and county recorder of such fact.

"9. A temporary replacement for a licensed or ordained minister certified pursuant to this section may solemnize marriages pursuant to subsection 1 during such time as he may be authorized to do so by a district judge in the county in which he is a temporary replacement, for a period not to exceed 90 days. The minister whom he temporarily replaces shall provide him with a written authorization which shall state the period of time during which it is effective."

More particularly the question is whether or not NRS 122.-070 grants powers to, and imposes duties upon, District Judges that are non-judicial in character, not incidental to the Judicial function, and are therefore unconstitutional and invalid delegations of ministerial powers and duties.

In the Court below appellant sought a Declaratory Judgment, Injunction and Recovery of Fine and Forfeiture pursuant to Sections 122.070, 122.260[1] and 122.270[2] of the Nevada Revised Statutes. Appellant alleged the Respondent had represented himself to be an ordained Minister of the Nevada Mission Fellowship; that he actually performed civil marriage ceremonies in the "Chapel of the Bells" located at 2233 Las Vegas Boulevard South, Las Vegas, Nevada, without any legal authority because he had failed to obtain a certificate of permission to perform marriages as required by, and in violation of, the statute (NRS 122.070).

Respondent admitted performing marriage ceremonies without following the statutory steps outlined to obtain a certificate of permission to perform marriages. An Order to Show Cause was issued, ordering the Respondent to appear before the District Court, and show cause why he should not be enjoined from performing civil marriages in Clark County, Nevada; why

---

[1]NRS 122.260. "Solemnization of marriage by unauthorized person; solemnization where legal impediment known: Penalty. If any person shall undertake to join others in marriage, knowing that he is not lawfully authorized so to do, or knowing of the existence of any legal impediment to the proposed marriage, he shall be punished by a fine not exceeding $500 and shall be imprisoned in the county jail until the fine is paid."

[2]NRS 122.270. "Recovery of forfeitures by civil actions. In all cases when a violation of the provisions of this Chapter is not declared a misdemeanor or gross misdemeanor, the fines and forfeitures shall be recovered by a civil action, to be brought by any person aggrieved or by the county treasurer."

he should not be adjudged guilty of violating the statutes relating to the performance of civil marriage ceremonies and fined in the sum of $500 for every unauthorized ceremony; and why he should not be jailed until he paid such fine and forfeiture.

In its decision the Court below held that the statutory regulations and directives to be followed to secure a certificate of permission to perform marriages were contrary to the provisions of the Nevada Constitution defining the jurisdiction and judicial functions of the District Courts.

This appeal is taken from the order holding the statute unconstitutional, and refusing to grant an injunction.

## I.

The division of powers is probably the most important single principle of government declaring and guaranteeing the liberties of the people. This subject is thoroughly and comprehensively explored by the late Honorable Arthur T. Vanderbilt in his book, "The Doctrine of the Separation of Powers" (Pub. 1953 by University of Nebraska Press).

A more worthwhile recommendation to judges and lawyers alike cannot be made to convince all who will read the book than that the division of powers is the most important principle of government. The booklet embodies three lectures given by the late Honorable Arthur T. Vanderbilt, former Chief Justice of the Supreme Court of New Jersey.

In the Foreword of the booklet it is stated: "* * * The extent to which a country can successfully resolve the conflict between the three branches of government is to a very great extent the measure of that country's capacity for self-government."

In the Introduction the author states: "In recent decades it has been fashionable in certain quarters to pronounce funeral orations over the remains of the doctrine [of separation of powers], but despite these attempts at burial it retains a remarkable vitality that tends to increase the more it is threatened. Instinctively people seem to sense in its violation, even in hours of danger, a threat to much that they hold dear in their daily life and they recognize in its observance the possibility of attaining the reign of law which alone can insure the freedom so essential to both the individual and to our civilization. * * *

"* * * Individual freedom and the progress of civilization are attainable, but only if each of the three branches of government conforms to the constitutional principles of the separation of powers. This they will do only if the people so will. The

problem in the first instance thus becomes one of popular education in the fundamental principles of free government. Among these principles there is none more significant today than the doctrine of the separation of powers." (Bracketing added.)

The Constitution of the State of Nevada distributes governmental powers into the Legislative, Executive and Judicial departments; and each department is separate from the others. Article 3, Section 1, of the Nevada Constitution provides: "The powers of the Government of the State of Nevada shall be divided into three separate departments,—the Legislative,—the Executive and the Judicial; *and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, except in the cases herein expressly directed or permitted.*" (Emphasis supplied.)

This section establishes the concept of tripartite government. The Constitution confirms and firmly fixes this principle of separation of governmental powers by creating, in Article 4, Article 5 and Article 6, a legislature, an executive and a judiciary. In the opening words of each Article's first section the whole power there granted is lodged in that branch, e.g., Article 6, Section 1, states, "The Judicial power of this State shall be vested in a Supreme Court, District Courts, and in Justices of the Peace. * * *"

The separation of powers; the independence of one branch from the others; the requirement that one department cannot exercise the powers of the other two is fundamental in our system of government.

Montesquieu has recited the reasons for the desirability of having the governmental powers separate. In City of Enterprise v. State, 69 P.2d 953 (Ore. 1937), he is quoted: "* * * there can be no liberty * * * if the power of judging be not separated from the legislative and executive powers. * * * Were the power of judging joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control, for the judge would be the legislator: Were it joined to the executive power the judge might behave with all the violence of an oppressor."

## II.

This appeal involves a consideration of what constitutes legislative, executive and judicial powers.

20

 ██

Briefly stated, legislative power is the power of law-making representative bodies to frame and enact laws, and to amend or repeal them. This power is indeed very broad, and, except where limited by Federal or State Constitutional provisions, that power is practically absolute. Unless there are specific constitutional limitations to the contrary, statutes are to be construed in favor of the legislative power. In the Matter of Platz, 60 Nev. 296, 108 P.2d 858 (1940). See also: Hard v. Depaoli, 56 Nev. 19, 41 P.2d 1054 (1935); Moore v. Humboldt County, 48 Nev. 397, 232 P. 1078 (1925); State v. Lincoln County Power Dist., 60 Nev. 401, 111 P.2d 528 (1941).

 ██

The executive power extends to the carrying out and enforcing the laws enacted by the Legislature. Except where there is a constitutional mandate or limitation, the Legislature may state which actions the executive shall or shall not perform.

 ██

"Judicial Power" is the capability or potential capacity to exercise *a judicial function*. That is, "Judicial Power" is the *authority* to hear and determine justiciable controversies. Judicial power includes the authority to enforce any valid judgment, decree or order. A mere naked power is useless and meaningless. The power must be *exercised* and it must *function* to be meaningful. A District Judge is a constitutionally established judicial officer (Const. Art. 6, Sections 1, 5 and 6), and the instrumentality by whom the Judicial Power is exercised and through whom District Courts function. A judicial function is the exercise of judicial authority to hear and determine questions in controversy that are proper to be examined in a court of justice. Judicial function includes the right to exercise any lesser power that can be subsumed under, or is included as an integral part of, the broader heading of "Judicial Power"; that is, any power or authority *that is inherent or incidental to a judicial function* is properly within the realm of judicial power, as described above. The incidental power must relate back and be directly derived from the basic judicial power and the basic judicial function, as described above. Judicial Power, or the exercise of judicial functions cannot include powers or functions that do not stem from the basic judicial powers and functions set forth in the Constitution, unless the Constitution otherwise expressly provides. Such a power or function would have to be termed non-judicial and would have to be otherwise expressly authorized by the Constitution to be valid.

Hence it follows that the judicial power, and the exercise thereof by a judicial function, cannot include a power or function that must be derived from the basic Legislative or Executive powers.

The foregoing conclusion is verified in the express language of the Constitution of Nevada. In the division of powers set forth in Article 3, Section 1, supra, in addition to vesting the powers in each branch of government, it also expressly provides that "* * * no person charged with the *exercise of powers* properly belonging to one of the departments shall *exercise any function* appertaining to either of the others * * *." (Emphasis supplied.) The *functions* of District Courts, referred to above, are expressly set forth in Article 6, Section 6, of the Constitution specifying the jurisdiction of District Courts, set forth in full hereafter.

## III.

In addition to the constitutionally expressed powers and functions of each Department, (the Legislative, the Executive, and the Judicial) each possesses inherent and incidental powers that are properly termed *ministerial*. Ministerial functions are methods of implementation to accomplish or put into effect the basic function of each Department. No Department could properly function without the inherent ministerial functions. Without the inherent powers of ministerial functions each Department would exist in a vacuum. It would be literally helpless. It is because of the inherent authority of ministerial functions that the three Departments are thus linked together and able to form a co-ordinated and interdependent *system* of government. While the Departments become a co-ordinated, efficient system under such a process, yet each Department must maintain its separate autonomy.

It is in the area of ministerial functions of each Department where there frequently occurs an overlapping or even a duplication of functions. However, the overlapping is more apparent than real. These seemingly overlapped powers have been termed quasi-legislative, quasi-executive, and quasi-judicial by students of government. Some of the confusion has been caused by a misuse of the "quasi" terms, even in decisions of courts, i.e., "quasi-judicial" should properly only refer to a legislative or executive activity, and not to a judicial activity. By definition "quasi" means superficially resembling but intrinsically different. It is when an activity seems to be judicial in nature,

but in reality it is not, that it is termed quasi-judicial. (A better term, perhaps, would be pseudo.) To say that an inherent, incidental judicial function is quasi-judicial is an absolute contradiction of terms. Such an overlapping or duplication of effort or function can be entirely valid so long as each can logically and legitimately trace its efforts or functions back to, and it is derived from, its basic source of power.

However, it is in the area of inherent ministerial powers and functions that prohibited encroachments upon the basic powers of a Department most frequently occur. All Departments must be constantly alert to prevent such prohibited encroachments lest our fundamental system of governmental division of powers be eroded. To permit even one seemingly harmless prohibited encroachment and adopt an indifferent attitude could lead to very destructive results. There are not a small number of decisions of courts of last resort in this country that have fallen into this trap of error. It is essential to the perpetuation of our system that the principle of the separation of powers be understood. The lack of understanding about the principle is widespread indeed, and creates a problem of no small proportions. There must be a fullness of conception of the principle of the separation of powers involving all of the elements of its meaning and its correlations to attain the most efficient functioning of the governmental system, and to attain the maximum protection of the rights of the people. It is because of this vital problem that the instant appeal must be examined in depth and thoroughly.

IV.

In the Legislature rests the entire power of the people, which is neither vested by the people through the Constitution in the executive or judicial departments nor limited by provisions in the Nevada or United States Constitutions. It is so certain as to require little discussion that the police power of the state to regulate public utilities, license businesses of all kinds, regulate such businesses, general control thereof including the power of granting or revoking licenses, permits or certificates in connection therewith, is exclusively legislative within the power. It is said at 45 Am.Jur. 742, Section 30: "A pastor is not an officer of a religious corporation, but, in the administration of the marriage ceremony is a public civil officer, * * *."

The legislature has the power, absent any constitutional provisions, to provide in the statutes the qualifications and licensing requirements of all persons thought necessary to legally

perform the marriage ceremony. Blakeslee v. Blakeslee, 41 Nev. 235, 168 P. 950 (1917); State ex rel. Fowler v. Moore, 46 Nev. 65, 207 P. 75 (1922); Clark v. Clark, 80 Nev. 52, 389 P.2d 69 (1964).

The State has a paramount interest in the marriage ceremony and its ramifications. Certain proper restrictions, such as the requirement that the person who performs the ceremony must be certified so to do, can be imposed by the Legislature, in a proper exercise of its legislative power. This power is subject to judicial control only where, in the exercise thereof, there has been a violation of a State or Federal constitutional provision, which limits the Legislature in the performance of acts in connection with the power it assumes to exercise. However, the State's cardinal interest in marriage and the ramifications thereof is no greater than the State's interest in the general health and welfare of the people: the right and power to license physicians, dentists, businesses of all kinds, to license or grant privileges to carry concealed weapons, regulate and license public utilities and other examples too numerous to mention, as more particularly set out hereafter. These subjects are all properly within the legislative sphere, and the function of licensing, controlling and regulating them is logically and legitimately derived from the basic legislative power. On the other hand, there are regulating and licensing powers of the Judicial Department that are within the province of the judicial function, i.e., licensing attorneys to practice law; prescribing rules of professional conduct for attorneys and judges; disbarring attorneys; promulgating and prescribing any and all rules necessary or desirable to handle the business of the courts or their judicial functions. In short, everything is a proper subject of licensing, controlling and regulating when the authority asserted by the judiciary can logically and legitimately be traced back to, and is derived from, the Judicial Power, as described above. See: State ex rel. Kitzmeyer v. Davis, 26 Nev. 373, 68 P. 689 (1902).

## V.

Generally, the legislature may not confer or impose powers non-judicial in character upon the judiciary. Montgomery v. State, 163 So. 365 (Ala. 1935); Oates v. Rogers, 144 S.W.2d 457 (Ark. 1940); Burnett v. Greene, 122 So. 570 (Fla. 1929); Anway v. Grand Rapids Ry. Co., 179 N.W. 350 (Mich. 1920); Searle v. Yensen, 226 N.W. 464 (Neb. 1929); Floeck v. Bureau of Revenue, 100 P.2d 225 (N.M. 1940); In

re Richardson, 160 N.E. 655 (N.Y. 1928); Great Northern Ry. Co. v. McDonnell, 45 N.W.2d 721 (N.D. 1950); Kearns v. Sherrill, 27 N.E.2d 407 (Ohio 1940); State v. Huber, 40 S.E.2d 11 (W. Va. 1946).

However, the legislature may grant administrative or ministerial powers or functions to courts and judges, but these powers or functions must be reasonably incidental to the fulfillment of judicial duties. Powers v. Isley, 183 P.2d 880 (Ariz. 1947); Allan v. Bailey, 14 P.2d 1087 (Colo. 1932); Borseth v. City of Lansing, 61 N.W.2d 132 (Mich. 1953); State ex rel. Mason v. Baker, 288 N.W. 202 (N.D. 1939). The case of Frazier v. Moffatt, 239 P.2d 123 (Cal. 1951), sums it up quite well: "In consonance with the spirit and intent of the foregoing constitutional provision [Separation of powers], the courts of this state have uniformly held that the Legislature is without power to confer upon courts *jurisdiction* that is not given or authorized to be given them by the Constitution, and that the Legislature can impose no duties on the judiciary but such as are of a *judicial character.* * * *

"* * * [T]he delegation of power imposed upon the judiciary by the Legislature * * * is the imposition of a duty with a *corresponding power that is to be classed as a judicial act.* This we say because in the light of the historical concept of the powers and duties of a magistrate, the authority conferred by section 838 of the Penal Code [issuance of warrants] is manifestly a power to exercise functions *incidental* to the judicial position of a magistrate. Such a power is no more objectionable than the power to appoint an arbitrator or a referee. Tuolumne County v. Stanislaus County, 6 Cal. 440, 442. If a power or duty imposed by the Legislature upon the judiciary partakes of a judicial or quasi-judicial [sic] character it is not subject to constitutional infirmity." (Emphasis and bracketing added.)

VI.

Article 6, Section 6, of the Nevada Constitution defines the jurisdiction of District Courts: "Sec: 6. Jurisdiction of district courts. The District Courts in the several Judicial Districts of this State shall have original jurisdiction in all cases in equity; also in all cases at law which involve the title or the right of possession to, or the possession of real property, or Mining claims, or the legality of any tax, impost, assessment, toll or municipal fine, and in all other cases in which the demand (exclusive of interest) or the value of the property in controversy, exceeds Three Hundred Dollars, also in all cases

relating to the estates of deceased persons, and the persons and estates of Minors and insane persons, and of the action of forcible entry and unlawful detainer; and also in all criminal cases not otherwise provided for by law; They shall also have final appellate jurisdiction in cases arising in Justice Courts, and such other inferior tribunals as may be established by law. The District Courts, and the Judges thereof shall have power to issue writs of Mandamus, Injunction, Quo-Warranto, Certiorari, and all other writs proper and necessary to the complete exercise of their jurisdiction; and also shall have power to issue writs of Habeas Corpus on petition by, or on behalf of any person held in actual custody in their respective districts."

This section is clear in establishing the areas over which the District Courts have jurisdiction and specifically describes *the judicial functions.*

The constitution is a living thing and is to be interpreted in the light of changing conditions. Evans v. Job, 8 Nev. 322 (1873); State ex rel. Miller v. Lani, 55 Nev. 123, 27 P.2d 537 (1933). But there cannot be a departure from the basic principles contained therein. This is emphatically confirmed in King v. Board of Regents, 65 Nev. 533, 200 P.2d 221 (1948), where this Court said, per the late revered Justice Badt, at 543: "Even though we concede the elasticity of the constitution, as a living thing, to be interpreted in the light of new and changing conditions, even, though we may not condemn legislation simply because the object or purpose is new (no matter how astonishing or revolutionary) so long as a constitutional limitation is not violated, the support of such a drastic departure from the usual conception of the constitutional 'control' vested in a board is undoubtedly weakened by its total lack of precedent." Continuing, this Court said further: "It is not essential that any given limitation of power be definitely expressed in the constitution. 'Every positive direction contains an implication against anything contrary to, or which would frustrate or disappoint the purpose of that provision. The frame of the government, the grant of legislative power itself, the organization of the executive authority, the erection of the principal courts of justice, *create implied limitations upon the law-making authority as strong as though a negative was expressed in each instance * * *.'* 1 Cooley's Constitutional Limitations, 8th Ed., 177. The rule is here so logically expressed and has been so long recognized and followed that it may at this time be stated almost as a maxim. State v. Arrington, 18 Nev. 412, 4 P. 735; State v. Moran, 43 Nev. 150, 182

P. 927. Nor is it weakened by recognition of the fact that certain executive and judicial powers are often exercised by the legislature [sic], judicial powers by the executive [sic] and certain legislative powers by the judiciary [sic]. Examples of this are so commonly recognized as not to require discussion." (Emphasis supplied.)

In State v. Douglass, 33 Nev. 82, 110 P. 177 (1910), this Court said, "Every constitutional officer derives his power and authority from the Constitution, the same as the Legislature does, and the Legislature, in the absence of express constitutional authority, is as powerless to add to a constitutional office duties foreign to that office, as it is to take away duties that naturally belong in it." The Court there further stated, "It is well settled by the courts that the Legislature, in the absence of special authorization in the Constitution, is without power to abolish a constitutional office *or to change, alter, or modify its constitutional powers and functions.*" (Emphasis added.)

And in Lake v. Lake, 17 Nev. 230, 30 P. 880 (1882), this Court said: "It is settled that affirmative words in a constitution, *that courts shall have the juridsiction stated, naturally include a negative that they shall have no other.*" (Emphasis added.)

The maxim "EXPRESSIO UNIUS EST EXCLUSIO ALTERIUS", the expression of one thing is the exclusion of another, has been repeatedly confirmed in this State. See also: In re Bailey's Estate, 31 Nev. 377, 103 P. 232 (1909); Leake v. Blasdel, 6 Nev. 40 (1870); State v. Arrington, 18 Nev. 412, 4 P. 735 (1884); Ex parte Arascada, 44 Nev. 30, 189 P. 169 (1920). The language in State v. Hallock, 14 Nev. 202 (1879), is also very important in this regard. There this Court said: "It is true that the constitution does not expressly inhibit the power which the legislature has assumed to exercise, but an express inhibition is not necessary. The affirmation of a distinct policy upon any specific point in a state constitution implies the negation of any power in the legislature to establish a different policy. 'Every positive direction contains an implication against anything contrary to it which would frustrate or disappoint the purpose of that provision. The frame of the government, the grant of legislative power itself, the organization of the executive authority, *the erection of the principal courts of justice, create implied limitations upon the law-making authority as strong as though a negative was expressed in each instance.*' People v. Draper, 15 N.Y. 544." (Emphasis supplied.)

## VII.

Our Constitution, even though being a "living thing" and flexible still has limitations upon the powers that the legislature can grant to a District Court. As was pointed out above, non-judicial functions cannot be imposed upon courts and judges unless expressly stated in the Constitution. Also, it is recalled that the intent of the framers of the Constitution must be fulfilled. Since Article 3, Section 1, states that there shall be legislative, executive and judicial powers separated in this State, we should determine for the purposes of decision what the framers meant when they separated the judicial department from the legislative and executive departments. The best authority for the answer is the Constitution itself. Article 6, Section 6, must be viewed as being a final statement concerning the areas over which the District Courts can exercise their power.

Article 6, Section 6, provides that District Courts have jurisdiction of all cases in law and equity. As pointed out, supra, Article 3, Section 1, vested the entire judicial power in the courts and the *functions* of the courts are expressly described in Article 6, Section 6. It was the intent of the framers of the Constitution to give only "judicial power" to the courts, and this is made clear by the phraseology used.

There are two recent Nevada cases which confirm the preceding conclusion. See: Nevada Tax Commission v. Hicks, 73 Nev. 115, 310 P.2d 852 (1957) and Nevada Tax Commission v. Mackie, 75 Nev. 6, 333 P.2d 985 (1959). (See also: Ormsby County v. Kearney, 37 Nev. 314, 142 P. 803 (1914).)

In Nevada Tax Commission v. Mackie, supra, it is stated: "Such being the case, the modification of the commission's order in this case amounted to administrative rather than judicial action and was beyond the authority of a reviewing court."

## VIII.

We have now reached the point where we must make specific applications of all of the foregoing basic, fundamental principles to the instant case.

NRS 122.070 requires: (1) an ordained minister to make application to a District Judge for a certificate (license) to perform marriages; and (2) the District Judge is to determine the qualifications of the minister. To determine the qualifications

of the minister (a) the District Judge may require the minister's congregation to furnish evidence of qualification and if so required the congregation *shall* furnish such evidence; and (b) the Sheriff and the District Attorney shall conduct an investigation at the request of the District Judge. The District Judge may thereupon grant or deny the certificate (license); and he may thereafter revoke the certificate for good cause shown after hearing.

This statute clearly imposes unconstitutional non-judicial powers and functions upon District Judges.

The case of In re Richardson, 160 N.E. 655 (N.Y. Court of Appeals 1928), clearly supports this conclusion. In an opinion written by the late Chief Judge Benjamin N. Cardoza, one of the most eminent jurists this country has ever produced, it is said:

"By Laws of 1928, chapter 15, which became a law on February 8, 1928, section 34 of the Public Officers Law was amended so as to provide that in any proceeding for the removal of a public officer, the Governor may direct his delegate, whether a judge or a commissioner, to conduct an investigation into the charges, or to take evidence as to the truth thereof at a hearing for such purpose, or both. If such a direction is made, the Governor may require the Attorney General or the district attorney of the county in which the officer resides to assist the person so appointed both in the conduct of the investigation and thereafter in the hearing. * * *

"We think there has been an attempt by section 34 of the Public Officers Law, both in its original and in its amended form, to charge a justice of the Supreme Court with the mandatory performance of duties nonjudicial. He is made the delegate of the Governor in aid of an executive act, the removal of a public officer. Matter of Guden, 171 N.Y. 529, 64 N.E. 451. At the word of command he is to give over the work of judging, and set himself to other work, the work of probing and advising. * * * From the beginnings of our history, the principle has been enforced that there is no inherent power in Executive or Legislature to charge the judiciary with administrative functions except when reasonably incidental to the fulfilment of judicial duties. People v. Hall, 169 N.Y. 184, 62 N.E. 170; Matter of State Industrial Commission, 224 N.Y. 13, 16, 119 N.E. 1027. * * * Elasticity has not meant that what is of the essence of the judicial function may be destroyed by turning the power to decide into a pallid opportunity to consult and recommend (cf. Frankfurter and Landis, Power of

Congress, etc.; a Study in the Separation of Powers, 37 Harvard Law Review, 1010, 1020). * * * Nowhere has the doctrine thus established been applied more steadily or forcefully than in the courts of New York. Matter of Davies, 168 N.Y. 89, 61 N.E. 118, 56 L.R.A. 885; Matter of State Industrial Commission, supra. *The function of the judges 'is to determine controversies between litigants'.* Matter of State Industrial Commission, supra. They are not adjuncts or advisers, much less investigating instrumentalities, of other agencies of government. Their pronouncements are not subject to review by Governor or Legislature. Dinan v. Swig, 223 Mass. 516, 112 N.E. 91. They speak 'the rule or sentence'.

"The statute was thus an encroachment upon the independence of judicial power even in the form in which it stood until recently amended. Still more clearly is it such an encroachment in its form as now reframed. The judge is made a prosecutor. He is to have his counsel and assistant counsel and experts and detectives. He is to follow trails of suspicion, to uncover hidden wrongs, to build up a case as a prosecutor builds one. If he were the district attorney of the county, he would do no more and no less. What he learns is not committed to a record available to all the world. It is locked within his breast to be withheld or disclosed as his discretion shall determine. No doubt he is to act impartially, neither presenting from malice nor concealing from favor. One might say the same of any prosecutor. The outstanding fact remains that his conclusion is to be announced upon a case developed by himself. Centuries of common-law tradition warn us with echoing impressiveness that this is not a judge's work. We should be sorry to weaken that tradition by any judgment of this court." (Emphasis supplied.)

In State Board of Medical Registration and Examination v. Scherer, 46 N.E.2d 602 (Ind. 1943), holding a similar act unconstitutional, the Court said: "The granting and revocation of licenses to engage in trades, businesses, or professions is a ministerial function. Ministerial boards act as fact-finding bodies to ascertain whether applicants conform to a legislative formula by which the right to a license is fixed. It is well settled that under the division of powers, *these ministerial fact-finding duties may not be delegated to courts,* and that the so-called appeal provisions of statutes which undertake to vest in courts jurisdiction to try and determine de novo the facts entitling an applicant to a license, or to continue to operate under a license, must be treated as merely providing procedure

by which the proceeding may be brought before the court for an investigation to determine whether the ministerial body has acted legally and within its powers. In all of such cases, if the ministerial board has conformed to a statutory procedural method, and its decision is supported by substantial evidence, its findings and determination will not be disturbed. Spurgeon et al. v. Rhodes, 1906, 167 Ind. 1, 78 N.E. 228; Stone, Superintendent v. Fritts, 1907, 169 Ind. 361, 82 N.E. 792, 15 L.R.A., N.S. 1147, 14 Ann.Cas. 295; In re Northwestern Indiana Telephone Co. et al., 1930, 201 Ind. 667, 171 N.E. 65; Lloyd et al. v. City of Gary, 1938, 214 Ind. 700, 17 N.E.2d 836. It is true that the statute here in question seems to contemplate a de novo proceeding before the court, and a finding of 'guilty' or 'not guilty', but, regardless of what may seem a legislative intention to the contrary, this court has consistently construed similar statutes as vesting in the courts only such jurisdiction as the Constitution permits. In cases of applicants for a license to practice medicine, surgery, or obstetrics, who have not obtained a diploma from a licensed school, the board examines the applicant in materia medica, surgery, and obstetrics. The impropriety of courts reexamining applicants in such subjects, and, in case of conflicting evidence as to qualifications, substituting its judgment for that of the board, is obvious. It is clear that courts cannot decide for themselves the cases in which they will assume jurisdiction to weigh evidence as to qualifications and those in which they will not. *The jurisdictional question involves basic constitutional considerations."* (Emphasis supplied.)

See also: People ex rel. Ferris v. Horton, 264 N.Y.S. 84, 147 Misc. 506, aff'd 269 N.Y.S. 579, 239 App.Div. 610 (1934), declaring unconstitutional a statute that allowed judges to issue permits to carry pistols; Brashears v. Lindenbaum, 56 A.2d 844 (Md. 1948), declaring unconstitutional a statute that allowed judges to issue liquor licenses; State v. Huber, 40 S.E.2d 11 (W.Va. 1946), declaring unconstitutional a statute that allowed judges to suspend liquor licenses; Close v. Southern Maryland Agricultural Ass'n, 108 A. 209 (Md. 1919), declaring unconstitutional a statute that allowed judges to license horse race betting or bookmaking.

To sustain the present law, conferring ministerial duties on District Judges to issue certificates of permission to marry, to conduct investigations for that purpose, and to revoke them, will, in principle, totally destroy the theory of separation of powers intended to be forever inviolate by Article 3, Section 1, and Article 6, Section 6.

By no stretch of the imagination can the ministerial functions imposed by the statute on District Judges be traced back to the Judicial Power and Judicial Function described above. They are not derived from the basic Judicial Power.

District Judges are constitutional officers (Art. 6, Secs. 1, 5 and 6). The statute in question attempts to impose on District Judges non-judicial functions that would change, alter or modify the judicial functions of District Courts *and* District Judges. see also: State v. Douglass, supra; Moore v. Orr, 30 Nev. 458, 98 P. 398 (1908).

It is our duty to maintain the supremacy of the Constitution. The courts must be wary not to tread upon the prerogatives of other departments of government or to assume or utilize any undue powers. If this is not done, the balance of powers will be disturbed and that cannot be tolerated for the strength of our system of government and the judiciary itself is based upon that theory.

NRS 122.070 is unconstitutional and void because it violates Article 3, Section 1, and Article 6, Section 6, of the Nevada Constitution by imposing legislative, administrative, ministerial, and investigative functions upon the District Courts *and* District Judges that are non-judicial in character and are unauthorized.

The lower court decision is affirmed.

THOMPSON, C. J., and COLLINS, J., concur.