DESERT CHRYSLER–PLYMOUTH, INC., A CORPORATION, AND PETE KUBENA, APPELLANTS, *v.* CHRYSLER CORPORATION, A CORPORATION, RESPONDENT.

No. 10459

October 10, 1979                    600 P.2d 1189

---

[Rehearing denied December 14, 1979]

*Hilbrecht, Jones, Schreck and Bernhard,* Las Vegas, for Appellants.

*Lionel Sawyer and Collins,* and *Robert M. Buckalew and Rodney M. Jean,* Las Vegas, for Respondent.

*Morton R. Galane, P. C.,* and *James J. Jimmerson,* Las Vegas, for Amicus Curiae Nevada Franchised Automobile Dealers Association.

## OPINION

By the Court, BATJER, J.:

Appellants own the only Chrysler-Plymouth retail automobile dealership in Clark County, Nevada. On June 8, 1977, respondent notified appellants of its intention to establish another dealership in Clark County; the proposed dealership to

be located several miles from appellants' place of business. On August 1, 1977, appellants filed suit in district court seeking, among other things, to enjoin the establishment of the second dealership.

Pursuant to Chapter 295, 1977 Statutes of Nevada, *see* specifically NRS 482.36365 and 482.36415(1), when the existing dealer files for injunctive relief, the director of the Department of Motor Vehicles cannot issue a license for the additional dealership until the court determines if there is "good cause" for the establishment of that dealership.[1] In its motion for partial summary judgment, respondent argued, relying upon a number of different theories, that this legislation was unconstitutional. The district court agreed, granted the motion and certified the issue pursuant to NRCP 54(b).[2] This appeal followed.

---

[1]NRS 482.36365 provides:

"1.   Sixty days before a manufacturer or distributor proposes to enter into a franchise establishing an additional dealership for new motor vehicles, or relocate an existing dealership in the relevant market area of another dealer in the same line and make, the manufacturer or distributor shall notify, by registered or certified mail, return receipt requested, the director and each dealer in that line and make in the relevant market area of its intention to establish or relocate an additional dealership.

2.   Before the effective date of the proposed establishment of an additional dealership or relocation of an existing dealership, any aggrieved dealer may apply to the district court in the county where the dealership is located for injunctive relief to restrain the establishment or relocation.

3.   In any hearing pursuant to this section, the manufacturer or distributor has the burden of proof to establish there is good cause for establishing an additional dealership or relocating an existing dealership.

4.   In determining whether good cause has been established, the court shall take into consideration the existing circumstances, including:

(a) The permanency of the investment of any affected dealer.

(b) The effect on the retail new motor vehicle business and the consuming public in the relevant market area.

(c) Whether it is beneficial or injurious to the public welfare for an additional or relocated dealership to be established.

(d) Whether a dealer of the same line and make in that relevant market area is providing adequate competition and convenient service to consumers for the new motor vehicles of the same line and make, including the adequacy of new motor vehicle sales and service facilities, equipment, supply of vehicle parts and qualified sales and service personnel.

(e) Whether the action is for the purpose of coercing any existing dealer."

NRS 482.36415(1) provides:

"1.   The director shall revoke or refuse to issue a dealer's license for a new franchise or a franchise replacing a canceled or terminated franchise if an action for injunctive relief pursuant to NRS 482.3636, 482.36365 or 482.36411 has been instituted and a copy of the complaint is filed with the director by the complaining dealer."

[2]The district court found that the legislation denied respondent due process since the appellants were able to obtain a "de facto injunction" simply by the

During oral argument this court queried whether the statutory scheme was in violation of the separation of powers principle enumerated in Article 3, Section 1, and Article 6, Section 6, of the Nevada Constitution.[3] Further briefing was ordered on this issue.

Although we have on occasion declined to review constitutional issues not raised below, *e.g.,* Munoz v. State ex rel. Dep't of Highways, 92 Nev. 441, 444, 552 P.2d 42, 43–44 (1976), we have done so not because of any jurisdictional limitation, but merely as a matter of practice. *See* Krause v. Sacramento Inn, 479 F.2d 988, 989 (9th Cir. 1973). Relaxation of this rule is occasionally appropriate. *Cf.* Krause v. Sacramento Inn, *supra;* Staton v. Mayes, 552 F.2d 908, 915 (10th Cir. 1977); Gomes v. Williams, 420 F.2d 1364, 1367 (10th Cir. 1970); Ruth v. Indus. Comm'n, 490 P.2d 828 (Ariz. 1971); VanSickle v. Shanahan, 511 P.2d 223, 231 (Kan. 1973); Shavers v. Kelley, 267 N.W.2d 72, 84–85, n. 14 (Mich. 1978); Laufenberg v. Cosmetology Exam. Bd., 274 N.W.2d 618, 624 (Wisc. 1979). Furthermore, an appellate court may *sua sponte*

---

filing of the action. The district court based its decision on Orrin W. Fox Co. v. New Motor Vehicle Board, 440 F.Supp 436 (C.D.Cal. 1977). However, subsequent to the district court's decision in this case, the United States Supreme Court reversed the federal district court's decision. New Motor Vehicle Board v. Orrin W. Fox Co., 439 U.S. 96, 99 S.Ct. 403 (1978).

[3]Article 3, Section 1, of the Nevada Constitution provides:

"The powers of the Government of the State of Nevada shall be divided into three separate departments, —the Legislative, —the Executive and the Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, except in the cases herein expressly directed or permitted."

Article 6, Section 6, of the Nevada Constitution provides:

"The District Courts in the several Judicial Districts of this State shall have original jurisdiction in all cases in equity; also in all cases at law which involve the title or the right of possession to, or the possession of real property, or Mining claims, or the legality of any tax, impost, assessment, toll or municipal fine, and in all other cases in which the demand (exclusive of interest) or the value of the property in controversy, exceeds Three Hundred Dollars, also in all cases relating to the estates of deceased persons, and the persons and estates of Minors and insane persons, and of the action of forcible entry and unlawful detainer; and also in all criminal cases not otherwise provided for by law; They shall also have final appellate jurisdiction in cases arising in Justices Courts, and such other inferior tribunals as may be established by law. The District Courts, and the Judges thereof shall have power to issue writs of Mandamus, Injunction, Quo-Warranto, Certiorari, and all other writs proper and necessary to the complete exercise of their jurisdiction; and also shall have power to issue writs of Habeas Corpus on petition by, or on behalf of any person held in actual custody in their respective districts."

raise a constitutional issue for the first time. *Mountain States Tel. & Tel. Co. v. Animas Mosquito Control Dist.*, 380 P.2d 560 (Colo. 1963). In the case at hand it is appropriate for this court to raise the separation of powers issue; since the statutes were assailed on constitutional grounds, it would be paradoxical for us to uphold the statutes on the grounds raised by the parties, yet ignore a clear violation of the separation of powers doctrine.

In *Galloway v. Truesdell*, 83 Nev. 13, 422 P.2d 237 (1967), we held that a statute which delegated to the district courts the obligation of certifying licensed or ordained ministers to perform marriages was unconstitutional because the legislation imposed on the judiciary an administrative duty (licensing) which was not related to a judicial function. *See also* Cromwell v. Jackson, 52 A.2d 79 (Md. 1947). Although the licensing function of the court was more conspicuous in the *Galloway* statutory scheme than it is here, the statutes herein involved nonetheless require the district courts to determine if a license should issue. Since the director of the Department of Motor Vehicles cannot license the new dealership until the district court has ascertained if "good cause" mandates the additional dealer, the court is in reality the licensing entity. Under this scheme the court is performing a pre-licensing fact-finding function rather than resolving an actual case or controversy. The Legislature cannot, using the guise of permitting a party to seek "injunctive relief", require the courts to perform such a non-judicial function.

In determining if good cause exists for the establishment of the additional dealership, the statutes mandate that the district court consider whether the additional dealership would be in the public interest. NRS 482.36365(4). Here the determination of "public interest" should not have been delegated to the courts. They are not equipped to independently investigate the facts in order to assure that the general public is protected. *Chemical Bank & Trust Co. v. Falkner*, 369 S.W.2d 427, 432 (Tex. 1963).

Other states have enacted legislation dealing with the establishment of new automobile franchises. In most of those states the legislatures assigned the task of administering the legislation to an administrative board or agency.[4] In others the legis-

---

[4]*E.g.,* Ariz. Rev. Stat. Ann. § 28-1304.02 (1976); Colo. Rev. Stat. tit. 12, art. 6, §§ 101-123 (1978); Cal. Veh. Code § 3062 (West Supp. 1977-1978); Fla. Stat. Ann. § 320.642 (West 1975); Haw. Rev. Stat. §§ 437-1 to 437-42 (1976); Iowa Code Ann. §§ 322A.1-.17 (West Supp. 1978); Neb. Rev. Stat. chap. 60, §§ 1401-1435 (1978); N.C. Gen. Stat. § 20-305(5) (1978); R.I. Gen. Laws §§

latures enacted legislation which made the arbitrary or unfair establishment of additional dealerships unlawful.[5] The Nevada statutes do not contain similar provisions. In testimony before the Senate Committee on Commerce and Labor the executive director of the Nevada Franchised Automobile Dealers Association explained to the Committee that the reason the courts, rather than the Department of Motor Vehicles, were being obligated to administer this legislation was because the director of that agency objected to the additional workload. Such a reason is hardly justification for imposing an unconstitutional function on the courts. For the reasons stated in Galloway v. Truesdell, *supra,* we find that sections 11, 12, 20 and 21 of Chapter 295, 1977 Statutes of Nevada, *see* NRS 482.3636, 482.36365, 482.36415 and 482.3642 are unconstitutional because they are in violation of Article 3, Section 1, and Article 6, Section 6, of the Nevada Constitution.

We now must determine if the remaining sections of Chapter 295 are severable from the parts herein held invalid. Despite the wording of NRS 0.020,[6] which is the general severability clause, it is a function of this court to consider whether the remainder of the statute can stand independently and whether the Legislature would have intended it to do so. County of Clark v. City of Las Vegas, 92 Nev. 323, 335-337, 550 P.2d 779, 787-788 (1976). In this case it is clear that the legislation is separable and that the Legislature would have intended severance. The remaining sections of Chapter 295 define unfair business practices and provide for civil penalties when these laws are violated. *See* NRS 482.36425. Such legislation is divisible from that which imposes a licensing function on the district court. Furthermore, since it was the intent of the Legislature to enact a law that regulated motor vehicle franchises, it must be presumed that the Legislature would have intended that the

31-5.1-1 to 31.5.1-17 (Supp. 1978); S.D. Comp. Laws Ann. tit. 32, §§ 6A-3,-4 (1976); Tenn. Code Ann. § 59-1714(c) (Supp. 1978); and Va. Code § 46.1-547(d) (Supp. 1979).

[5]*E.g.,* Mass. Gen. Laws Ann. chap. 93B, §§ 4, 12, 12B (Supp. 1978); and N.Mex. Stat. Ann. §§ 57-16-1 to 57-16-16 (1978).

[6]NRS 0.020 provides:

"1. If any provision of the Nevada Revised Statutes, or the application thereof to any person, thing or circumstance is held invalid, such invalidity shall not affect the provisions or application of NRS which can be given effect without the invalid provision or application, and to this end the provisions of NRS are declared to be severable.

2. The inclusion of an express declaration of severability in the enactment of any provision of NRS or the inclusion of any such provision in NRS, does not enhance the severability of the provision so treated or detract from the severability of any other provision of NRS."

remaining portion of the act be severable from the invalid provisions. *See* NRS 482.318.[7] Anthony v. State, 94 Nev. 337, 580 P.2d 939 (1978).

Because of our determination here we need not consider the constitutional issues raised by the parties.

Affirmed on other grounds.

MOWBRAY, C. J., and THOMPSON, GUNDERSON, and MANOUKIAN, JJ., concur.

---

[7]NRS 482.318 provides:

"The legislature finds and declares that the distribution and sale of motor vehicles in the State of Nevada vitally affects the general economy of the state and the public interest and the public welfare, and in the exercise of its police power, it is necessary to regulate and to license motor vehicle manufacturers, distributors, new and used vehicle dealers, rebuilders, leasing companies, salesmen, and their representatives doing business in the State of Nevada in order to prevent frauds, impositions and other abuse upon its citizens."