**130 Nev., Advance Opinion 96**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| FIRST FINANCIAL BANK, N.A., Appellant, vs. GORDON R. LANE AND CAROL LANE, INDIVIDUALLY AND AS TRUSTEES OF THE LANE FAMILY TRUST; AND JOHN C. SERPA, INDIVIDUALLY AND AS TRUSTEE OF THE JOHN C. SERPA TRUST, Respondents. | No. 62606 |



FILED

DEC 24 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court judgment in a deficiency judgment action. Second Judicial District Court, Washoe County; Jerome Polaha, Judge.

*Reversed and remanded.*

Lionel Sawyer & Collins and Leslie Bryan Hart and Courtney Miller O'Mara, Reno,
for Appellant.

Lemons, Grundy & Eisenberg and Douglas R. Brown, Reno; Mir Saied Kashani, Los Angeles, California,
for Respondents.

BEFORE THE COURT EN BANC.

14-42035

By the Court, PICKERING, J.:

This case presents the question of whether the definition of "indebtedness" found in NRS 40.451 limits, through its interaction with NRS 40.459(1)(a) and NRS 40.459(1)(b), the amount a successor lienholder can recover in an action for a deficiency judgment to the amount of consideration such a lienholder paid to obtain its interest in the note and deed of trust. Specifically, we must determine the meaning of NRS 40.451's final sentence, "[s]uch amount constituting a lien is limited to the amount of consideration paid by the lienholder." Based on our review of NRS 40.451's text, context, and history, we hold that the clause simply ensures that a lender cannot recover in deficiency judgment for future advances secured but not paid at the time of default. And because the section therefore places no consideration-based limitation on this lender's recovery against the instant borrowers and guarantor, we reverse the district court's order to the contrary in this case and remand for further proceedings consistent with this opinion.

I.

Respondent borrowers, Gordon and Carol Lane, took out a three million dollar loan, individually and as trustees of the Lane Family Trust, secured by a piece of commercial real estate. Respondent John C. Serpa, individually and as trustee of the John C. Serpa Trust, executed a personal guaranty thereupon. The Lanes defaulted on their obligation, and Serpa failed to fulfill his guarantor duties. But before the original lender exercised its right to foreclose, the Federal Deposit Insurance Corporation was appointed its receiver and assigned the interest in the Lanes' loan to appellant First Financial Bank, N.A. (FFB), in exchange for

$2,256,879.90 (or 75% of the then-due balance of principal and accrued interest on the loan, $3,009,166.66). FFB foreclosed and sold the property in question—having a fair market value of $2,300,000.00—to itself at auction for $1,890,000.00. FFB then brought a deficiency judgment and breach of guaranty action against respondents, and the district court entered final judgment in respondents' favor "under NRS 40.451 because the fair market value of the subject property [$2,300,000.00] exceeds the consideration [FFB] paid [the FDIC] to acquire a lien on the property [$2,256,879.90]." FFB appeals.

## II.

NRS 40.451, the statute upon which the district court based its determination, delineates the categories of debt one seeking a deficiency judgment may collect, that is, an obligor's "indebtedness":

> [First Sentence:] As used in [the deficiency judgment statutes] "indebtedness" means the principal balance of the obligation secured by a mortgage or other lien on real property, together with all interest accrued and unpaid prior to the time of foreclosure sale, all costs and fees of such a sale, all advances made with respect to the property by the beneficiary, and all other amounts secured by the mortgage or other lien on the real property in favor of the person seeking the deficiency judgment. [Limitation:] Such amount constituting a lien is limited to the amount of the consideration paid by the lienholder.

Each item in the first sentence of NRS 40.451 represents a category of obligation that a mortgage or deed of trust can secure that, together, comprise the "indebtedness" enforceable by an action for a deficiency judgment following foreclosure. *See* NRS 40.455-40.459. Thus, category one is the unpaid principal balance of the original obligation; category two is interest accrued but unpaid on the first; category three subsumes the

costs and fees associated with the foreclosure sale; and category four captures expenditures that the lender makes to protect the property and thus its security, such as payment of casualty insurance, needed maintenance, or towards liens that would take priority over the lender's security interest. *See* Restatement (Third) of Property: Mortgages § 2.2 (1997). The fifth category concerns other secured amounts that must be treated as separate and apart from the "principal balance of the obligation" for the purposes of indebtedness calculation—*i.e.*, future advances. *Id.* § 2.1; *see* NRS 106.025(5), Covenant 5 (identifying future advances as distinct from "mortgage debt"); Uniform Land Security Interest Act (ULSIA) § 302 *cmt. 1* (1975) (distinguishing between an "advance" made when a security agreement first attaches and "future advances").

At issue is the effect on those five indebtedness categories of NRS 40.451's second sentence, the limitation: "Such amount constituting a lien is limited to the amount of the consideration paid by the lienholder."

### A.

The opening phrase "[s]uch amount" suggests that the limitation "applies to the last antecedent," *see Sims' Lessee v. Irvine*, 3 U.S. 425, 444 n.2 (1799); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 146 (2012), that is, that it affects only category five or "all other amounts secured by the mortgage or other lien." NRS 40.451. Moreover, of the remaining text of NRS 40.451, the language in the limitation, "amount constituting a lien" most nearly mirrors that of the category directly proximate, "amounts secured by . . . lien." Indeed, as NRS 40.451 was originally enacted, this pairing was obvious, since the final category of indebtedness was described as

comprising "all other amounts secured by the mortgage or deed of trust *or which constitute a lien*," A.B. 493, 55th Leg. (Nev. 1969), using the same words—amounts, constitute, and lien—as the limitation sentence uses. In the section's original form that clause was the only appearance of the term "lien" in the first sentence—in its 1969 version, category one referred to a "mortgage or deed of trust" rather than a "mortgage or other lien," as it does currently. *Id.* And when the original language was altered to its present state in 1989, *see* S.B. 479, 65th Leg. (Nev. 1989), the change was only intended to accomplish a "minor grammatical correction[ ] to existing law." Remarks of Michael E. Buckley, Hearing on S.B. 479 Before the Senate Judiciary Comm., 65th Leg. (May 30, 1989). Thus, NRS 40.451's text, both as it originally existed and as it exists today, indicates that the limitation was intended to reach only the final category of indebtedness, achieving the unremarkable effect of ensuring that a lender could not recover in deficiency judgment for future advances secured but unpaid at the time of default. *See also* ULSIA § 302 *cmt. 4* (1975) (discussing the priority of future advances and assuming that only advances actually paid to a borrower could be recovered by a lender).

Likewise, to the extent that the Legislature discussed the meaning of NRS 40.451's limitation, that discussion suggests that the clause merely states this proposition, so self-evident that it almost could have gone without saying at all. In particular, the attorney who proposed the definition of indebtedness now codified in NRS 40.451, Mr. Edward Hale, described the section's limitation as capping deficiency judgment according to that amount *"due and owing* to the party seeking money judgment by the party against whom the judgment is sought." Hearing on A.B. 493 Before the Assembly Comm. on Judiciary, 55th Leg. (March 13,

SUPREME COURT
OF
NEVADA

(O) 1947A

1969) (emphasis added). And during the Legislature's meetings on a later enacted statute limiting deficiency recovery in the context of speculation in instruments—meetings that can provide insight into the common understanding of NRS 40.451, if not the Legislative intent behind it—the sponsor of the relevant bill addressed the state of the then-applicable law of deficiency judgments, of which NRS 40.451 was a key component, stating, "Under current statute, a court can award deficiency judgments under Chapter 40 of the Nevada Revised Statutes (NRS) after a foreclosure sale *provided the sale is less than the amount that the borrower owes the lender.*" Hearing on A.B. 273 Before the Assembly Comm. on Commerce & Labor, 76th Leg. (March 23, 2011) (emphasis added).

In this way, in *Interim Capital LLC v. Herr Law Group, Ltd.*, a federal district court held that an interpretation of NRS 40.451's limitation that considered the clause in isolation to "limit[ ] the entire indebtedness to the amount a purchaser of a note paid for that note" could not be squared with the section's text or legislative history. *See* 2:09-CV-01606-KJD-LRL, 2011 WL 7047062, at *6 (2011) (unpublished disposition) ("The last sentence of NRS 40.451 modifies only the last omnibus or catchall category in the list of items comprising indebtedness."). First, consistent with our reasoning above, the federal district court recognized that "'[s]uch' is an adjective meaning 'of the character, quality, or exten[t] previously indicated or implied,'" and that the phrase "such amount" therefore referred back to "all other amounts" in category five. *Id.* at *7 & n.8 (quoting *Merriam Webster's Collegiate Dictionary* 1176 (10th ed. 1993)). Going further, the federal district court noted that "[i]ndebtedness is not defined as an 'amount,' but rather a list of types of obligations[,]" and therefore, "[g]rammatically, 'such amount' [could not] reasonably

reference 'indebtedness' in this context." *Interim Capital*, 2011 WL 7047062, at \*7. Confirming this reading, the federal district court continued, was Assemblyman Richard Bryan's explanation that "the last sentence of NRS 40.451 equates to the 'lender being limited to actual out of pocket expenses that he may recover.'" *Interim Capital*, 2011 WL 7047062, at \*7 (quoting Hearing on A.B. 493 Before the Assembly Comm. on Judiciary, 55th Sess., March 13, 1969, at 13). According to the *Interim Capital* court, that Bryan "refer[red] to actual out of pocket expenses is evidence that the statement modifies the catch-all 'other amounts' as opposed to indebtedness generally." *Interim Capital*, 2011 WL 7047062, at \*8. Finding this reasoning persuasive, we adopt it here as additional support. *See Schuck v. Signature Flight Support of Nev., Inc.*, 126 Nev. ___, ___ n.2, 245 P.3d 542, 546 n.2 (2010) (this court may rely on unpublished federal district court decisions where persuasive).

Thus, the meaning of NRS 40.451's limitation is plain, its intended result uncomplicated. We hold that the clause affects only the final category of NRS 40.451 indebtedness—namely, other amounts secured by a lien on the property in question—and that it serves to limit the measure of that final category for the purposes of deficiency recovery to consideration actually exchanged between a lender and borrower to induce said lien.

## B.

With the 2011 enactment of NRS 40.459(1)(c)—which addresses speculation in instruments by providing that if a person seeking a deficiency judgment "acquired the right to obtain the judgment from a person who previously held that right," that person's judgment may not exceed "the amount by which the amount of the consideration paid for that

SUPREME COURT
OF
NEVADA

(O) 1947A

right exceeds the fair market value of the property sold at the time of sale or the amount for which the property was actually sold"—respondents argue that latent ambiguity was unearthed in NRS 40.451, to wit: the phrase "consideration paid" in the limitation could refer to that consideration paid by a third-party secondary purchaser to obtain an assignment of the secured debt.[1] *See Sandpointe Apartments v. Eighth Judicial Dist. Court*, 129 Nev. ___, ___, 313 P.3d 849, 854-56 (2013). Under such a reading, the section would limit an element of that successor-in-interest's indebtedness to the money paid to acquire the relevant instruments, rather than the more straightforward reading proffered above. Thus, after NRS 40.459(1)(c)'s enactment, in *Sandpointe*, a case where the potential retroactive effect of NRS 40.459(1)(c) was in issue, we discussed whether NRS 40.451's limitation denoted "consideration paid" by a successor assignee without deciding the matter. *Id.* at ___, 313 P.3d at 854-56. Respondents seize on language in *Sandpointe* favoring an interpretation contrary to that adopted above and by the federal district court in *Interim Capital*; dictum, wherein we stated that NRS 40.451's final sentence may limit "one factor" for the purposes of calculating indebtedness, specifically the first category or principal obligation, to the amount of consideration that a "successor paid for the mortgage or lien." *Id.* at 855. But the proper interpretation of NRS 40.451 was not squarely presented in *Sandpointe*, and therefore principles of *stare decisis* do not apply with the same force that they might otherwise.

---

[1]The parties concede that NRS 40.459(1)(c) does not itself control this case's outcome because the sale in question took place prior to the section's effective date.

*See Sherman v. S. Pac. Co.*, 31 Nev. 285, 290, 102 P. 257, 259 (1909).[2] And in any case, respondents' interpretation of NRS 40.451 lacks merit.

First, NRS 40.451's text provides no support for the respondents' reading inasmuch as it makes no mention of successors-in-interest, and because the categories of indebtedness it describes are all obligations owed by a borrower to a lender, to which consideration paid by a successor to obtain the debt's assignment is irrelevant. And, even setting aside the maxim "expressio unius est exclusio alterius" and its application here, *Galloway v. Truesdell*, 83 Nev. 13, 26, 422 P.2d 237, 246 (1967), the Legislature's failure to make any such mention is significant, because the respondents' interpretation of the section would amount to an abrogation of "the common law of most states, [which] has long recognized that 'an assignment operates to place the assignee in the shoes of the assignor, and provides the assignee with the same legal rights as the assignor had before assignment.'" *Interim Capital*, 2011 WL 7047062, at *6 (quoting *Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 803 (Minn. 2004)). This court will not read a statute to abrogate the common law without clear legislative instruction to do so. *See Orr Ditch & Water Co. v. Justice Court of Reno Twp., Washoe Cnty.*, 64 Nev. 138, 164, 178 P.2d 558, 570 (1947).

Second, though it was the introduction of NRS 40.459(1)(c) by the Legislature that awakened NRS 40.451's supposed dormant ambiguity, that introduction also offers persuasive evidence that NRS

---

[2]To the extent that the parties rely on *Sandpointe* to limit the value of a lien to the amount the successor-in-interest paid, this argument improperly extends *Sandpointe* to apply to an issue that it did not resolve and is thus without merit.

40.451's limitation does not contemplate consideration exchanged between an assignor and assignee. NRS 40.459(1)(c) now limits the value of the lien (as well as that of NRS 40.451 categories two through five) to the consideration paid by a successor-in-interest to the mortgagee, so respondents' interpretation of NRS 40.451 would render NRS 40.459(1)(c) nearly obsolete where an assignment of rights is in issue. And, where no assignment is in play, NRS 40.451's limitation would have no practical effect because the "consideration paid" by the lienholder, as respondents interpret the phrase, will also be the "principal balance" of the loan. *See also Interim Capital*, 2011 WL 7047062 *8 (noting that the "[d]efendants cannot account how their interpretation would apply to a primary lender").

Even presented with this reality, respondents press that, under their interpretation, NRS 40.459(1)(c) does not leave NRS 40.451 entirely meaningless because the former would limit the entire amount of the *judgment* to consideration paid by the assignee, while the latter would only limit the value of the *lien*, that is, the principal obligation, to consideration paid by the assignee (theoretically leaving categories two through five demarcated above unlimited for the purposes of deficiency judgment recovery). But, pragmatically speaking, this is a distinction without much difference; the effect of any limitation on the value of a lien in the deficiency judgment context is also to limit the total amount of the judgment since the allowed indebtedness is the minuend in the base equation. And, all of respondents' lawyerly hair-splitting aside, it is simply not reasonable to read the sections as accomplishing so nearly the same effect given the body of litigation NRS 40.459(1)(c) spurred shortly

after its 2011 enactment,[3] and the relative dearth of case law involving NRS 40.451, which languished in obscurity from its enactment in 1969 until *Interim Capital* was decided in 2011, during which time it was cited only as the first in a sequence of statutes that governed deficiency judgments.[4]

Third, NRS 40.451's legislative history confirms the accuracy of this court's current bearing—foremost in that throughout the multitude of hearings to which the Legislature subjected then A.B. 493, 55th Leg. (Nev. 1969), there was no mention of successors-in-interest to the note and deed of trust, nor of any intent to dramatically alter the common law's landscape with regard to assignors and assignees, concerns that, as demonstrated above, would have likely been central if the limitation had the meaning respondents contend, and which were indeed central in the Legislature's conversations surrounding the later enacted NRS 40.459(1)(c). *See, e.g.*, Hearing on A.B. 273 Before the Assembly Comm. on Commerce & Labor, 76th Leg. (March 23, 2011) (discussing the change in law NRS 40.459(1)(c) would achieve as to successors-in-interest). The 1969 Legislature's silence on this issue is, perhaps, unsurprising given that, as respondents recognized at oral argument, it was unlikely that "the Legislature [that enacted NRS 40.451] even thought about speculation in

---

[3]*See, e.g.*, *Branch Banking & Trust Co. v. Pahrump 194, LLC*, ___ F. Supp. 2d ___, 2014 WL 3747644 (D. Nev. July 30, 2014); *Branch Banking & Trust Co. v. Regena Homes, LLC*, 2014 WL 3661109 (D. Nev. July 23, 2014); *Sandpointe*, 129 Nev. ___, 313 P.3d 849.

[4]*See, e.g.*, *Mfrs. & Traders Trust Co. v. Eighth Judicial Dist. Court*, 94 Nev. 551, 556, 583 P.2d 444, 448 (1978), *overruled by First Interstate Bank of Nev. v. Shields*, 102 Nev. 616, 730 P.2d 429 (1986).

instruments, which really was not an issue in 1969." Indeed, when NRS 40.459(1)(c) was introduced in 2011, its sponsor explained, the Legislature was *changing the law* so as to "prevent[ ] a creditor from profiting from a judgment in excess of the amount the creditor paid for the right to pursue such a judgment." Hearing on A.B. 273 Before the Assembly Comm. on Commerce & Labor, 76th Leg. (March 23, 2011) (emphasis added).

### III.

We therefore hold that NRS 40.451 does not in and of itself set an assignor-assignee, consideration-based limit on FFB's recovery against respondents. The limitation speaks only to the final category of indebtedness, "all other amounts secured by the mortgage or other lien on the real property in favor of the person seeking the deficiency judgment," and limits the measure of that category to consideration extended by the lender to the borrower.

In the district court, the parties stipulated to several legal questions—"[W]hether FFB's seeking a deficiency judgment is limited by the amount FFB paid when acquiring the Loan and Guarantees"; "[I]f necessary, the balance due under the Loan at the time of the foreclosure sale, plus additional accrued interest, additional late charges and any collection costs, but after giving credit for the fair market value of the Property as of the date of the foreclosure"; and, "[W]hether, based on applicable law, any deficiency is owed and if so, how much." Our reversal of the district court's judgment as to the first question necessarily reopens the latter two. Thus, remand is necessary, and we leave to the district court to consider in the first instance the issue respondents belatedly tender on appeal respecting limitations peculiar to Serpa's guarantee.

Therefore, we reverse the district court's summary judgment and remand this matter for further proceedings consistent with this opinion.

_____, J.
Pickering

We concur:

_____, C.J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A

13