(Nos. 35353, 35354 Cons.—
ILLINOIS HOSPITAL SERVICE, INC., Appellee, *vs.* JOSEPH S. GERBER, Director of Insurance, Appellant.

*Opinion filed January 22, 1960—Rehearing denied March 28, 1960.*

HERSHEY, J., took no part.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, Assistant Attorneys General, of counsel,) for appellant.

JAMES B. MARTIN, of Springfield, and WILLIAM D. KNIGHT, JR., of Rockford, (ENSEL, MARTIN, JONES & BLANCHARD, of Springfield, and KNIGHT & KNIGHT, of Rockford, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The Director of Insurance appeals from judgments of the circuit court of Winnebago County which held unconstitutional section 14 of the Non-Profit Hospital Service Plan Act. ( Ill. Rev. Stat. 1959, chap. 32, par. 562b.) That section provides that no corporation organized under the act "shall solicit, or issue a contract to, any subscriber in any County of this State unless there are at the time in full force and effect contracts  *  *  *  between said corporation and hospitals which operate not less than thirty per cent (30%) of the total number of general hospital beds which normally serve the residents of said County."

The plaintiff, Illinois Hospital Service, Inc., is a non-profit corporation organized under the act. The Director conducted hearings and found that in 32 of the counties of the State plaintiff did not have the contracts with hospitals that section 14 requires. He therefore entered orders which, with respect to those counties,. prohibited the plaintiff from soliciting or issuing new subscriber contracts, from selling riders to existing subscriber contracts; from adding dependents to the coverage provided by existing contracts, if an additional charge is made for the addition, and from issuing subscriber contracts to new members of existing

groups. The Director also forbade the replacement of existing subscriber contracts with new or different forms in any county of the State "at any time during which solicitation or issuance of new subscribers' contracts is forbidden by this order."

The plaintiff then instituted these actions, which have been consolidated in this court, to review the orders of the Director. The circuit court held section 14 unconstitutional and reversed the orders of the Director. The Director has appealed. The primary issue is the constitutionality of section 14 of the act, but before we reach that issue it is necessary to dispose of certain other contentions advanced by the parties.

These actions were brought under section 407 of the Insurance Code, (Ill. Rev. Stat. 1959, chap. 73, par. 1019,) which is incorporated in the present act by reference to govern proceedings for judicial review of orders of the Director. (Ill. Rev. Stat. 1959, chap. 32, par. 560.) That section of the Insurance Code provides for review upon the transcript of the proceedings before the Director, and "such additional evidence as may be offered at the hearing of said cause before the court by any of the parties."

The Director argues that section 407 is unconstitutional as a result of our opinion in *West End Savings & Loan Ass'n* v. *Smith*, 16 Ill.2d 523. In that case the statute authorized a review of the administrative determinations of the Auditor of Public Accounts under the Savings and Loan Act by a trial *de novo* in the circuit court. We held the provision invalid, on the ground that "where statutes purport to vest in courts a supervisory power which is not limited to a review of the administrative action but extends to a redetermination of factual issues, their effect is to grant, unlawfully, a power to exercise executive functions." (16 Ill.2d at 525.) In the course of that opinion it was also stated, however, that "The power and duty in courts to determine if administrative findings and orders have

support in the evidence is not a power to hear new evidence * * *." It is upon this statement that the Director relies in asserting the unconstitutionality of the present statute.

What was involved in the *West End Savings and Loan Association case* was the validity of a statute which provided for judicial determination, upon a trial *de novo,* of the propriety of allowing a savings and loan association to move from one location to another. The function thus sought to be imposed upon the courts was a nonjudicial one. In the statute that is now before us, there is no provision for judicial determination after a trial *de novo,* and the authority of the court is limited to the entry of an order affirming or reversing the administrative determination of the Director.

As we said in *Illinois Bell Telephone Co.* v. *Fox,* 402 Ill 617, 626-7: "A branch of the judiciary does not exercise executive or administrative power unless there devolves upon the court the same power to exercise discretion as has been committed to the administrative agency. (*Borreson* v. *Department of Public Welfare,* 368 Ill. 425.) Whether a court is empowered to hear additional evidence upon review of an administrative decision is immaterial, provided that the court is not also authorized to substitute its own judgment, founded on the record as enlarged, for that of the administrative body on matters properly within the province of administrative discretion." The authority to hear additional evidence that is granted by section 407 is likewise immaterial, because the section does not contemplate the performance of administrative functions by the court, and does not authorize the court to substitute its judgment for that of the Director. Therefore it does not offend against the constitutional doctrine of separation of powers.

The plaintiff challenges the Director's authority to inquire into its conduct and to compel its compliance with the Non-Profit Hospital Service Plan Act. The act pro-

vides that the Director shall have "the power of visitation and examination into the affairs of any such corporation and shall have free access to all of the books, papers and documents that relate to the business of the corporation and may summon and qualify witnesses under oath to examine its officers, agents or employees, or other persons in relation to the affairs, transactions and condition of corporation." (*sic.*) (Ill. Rev. Stat. 1959, chap. 32, par. 557.) The plaintiff reads the statutes as conferring only authority to investigate, but the traditional concept of "visitation" does not warrant this narrow reading. That concept is thus expressed in *Guthrie* v. *Harkness,* 199 U.S. 148, 158, 50 L. ed. 130, 134: "Visitors of corporations have power to keep them within the legitimate sphere of their operations, and to correct all abuses of authority, and to nullify all irregular proceedings." In the present statute the General Assembly has authorized the Director to hold hearings in connection with the exercise of his visitorial powers, and its purpose to confer upon him the authority to require compliance with the statute seems clear.

Section 14 was added to the act by amendment in 1947. The plaintiff contends that the section is not applicable to it because it was organized under the act before 1947 and because section 3 of the act has provided from the outset that no amendment to the act shall apply to corporations organized under it "unless they be expressly designated therein." (Ill. Rev. Stat. 1959, chap. 32, par. 553.) In our opinion this contention is without merit. The language of section 14 is that "No corporation which is subject to the provisions of this Act" shall issue contracts except in accordance with its provisions. This language includes the plaintiff as well as all other corporations that are subject to the act.

With the preliminary contentions thus disposed of, we come to the question of the constitutionality of section 14. The corporations with which the act is concerned are those

which are organized "for the purpose of establishing, maintaining and operating a non-profit Hospital service plan whereby Hospital service may be provided by the said corporation or hospital with which it has a contract for such care, * * * to those persons who become subscribers to said plan under a contract which entitles each subscribeer to certain hospital care, * * *." (Ill. Rev. Stat. 1959, chap. 32, par. 553.) Section 14 prohibits such a hospital-service-plan corporation from operating in any county unless it has contracts with hospitals "which operate not less than thirty per cent (30%) of the total number of general hospital beds which normally serve the residents of said County."

The record shows how the provisions of that section came to be invoked against the plaintiff. It contains statements of the Illinois Hospital Association that in 1957 it formulated a policy to solve a problem which had concerned it for "several years." The problem was whether the two Illinois Blue Cross Plans, one known as the "Chicago" plan, and the other, the plaintiff in this case, known as the "Rockford" Plan, should be allowed to operate concurrently in the same areas in the State. "On this question," the Association stated, "it is the opinion of the Board of Trustees that the public is better served and confusion avoided if only one Blue Cross Plan operates in a given area." Since the plans were unable to "agree upon territories," the Association directed the attention of its members to section 14, and recommended that no member hospital have a contract with more than one Blue Cross Plan. "If this is done, the Plan not selected would be restricted from operating in that County under the provisions of the State Statutes." The record also shows that as a consequence of the Association's action, many hospitals cancelled their contracts with the plaintiff, and plaintiff fell below the 30% figure in many counties.

Section 14 places control over the economic life of hos-

pital service plans in the hands of the hospitals. The statute does not suggest and the record does not show that any public purpose is served by placing this power over hospital service plans—and over those who desire to subscribe to them—in private hands. By means of annual reports and his powers of visitation and examination, the Director is required to supervise the financial stability of a hospital-service-plan corporation; its funds may be invested only in securities eligible for investment by life insurance companies. Costs incurred in the solicitation of subscribers are subject to the approval of the Director, as are the rates charged by the corporation to its subscribers and the rates of payment from the corporation to hospitals. (Ill. Rev. Stat. 1959, chap. 32, pars. 556, 557, 558, 559, 555.) In view of this comprehensive plan of governmental regulation, we see no proper purpose to be served by the private controls that are authorized by section 14.

Moreover, although section 14 gives hospitals ultimate power over hospital service plans, it specifies no standards upon the basis of which that power is to be exercised. So far as the statute is concerned, a single hospital or a group of hospitals may be motivated by caprice or by self-interest. A decision that puts a hospital service plan out of business is not required to be related in any way to the interests of subscribers to hospital service plans, whose interests may—or may not—coincide with those of the hospital.

If dominion over the economic life of one individual or enterprise is to be given to another, some justification must exist and the conditions upon which control is to be exercised must be stated with at least that degree of precision which is required when comparable authority is given to a public official. That is the meaning of our decisions in *Schroeder* v. *Binks,* 415 Ill. 192, and *People* v. *Brown,* 407 Ill. 565. Cf. *Fink* v. *Cole,* 302 N.Y. 216, 97 N.E.2d 873; *Union Trust Co.* v. *Simmons,* 116 Utah 422, 211 P.2d 190.

538

We hold, therefore, that section 14 violates section 2 of article II of the constitution of Illinois. The judgments of the circuit court are affirmed.

*Judgments affirmed.*

Mr. JUSTICE HERSHEY took no part in the consideration or decision of this case.