(Nos. 74151, 75293, 75323, 75358 cons.—)

FIELDS JEEP-EAGLE, INC., *et al.* (Grossinger Motors *et al.*, Appellants), v. CHRYSLER CORPORATION *et al.*, Appellees.

*Opinion filed December 22, 1994.—Rehearing denied January 30, 1995.*

HARRISON, J., joined by NICKELS, J., dissenting.

Richard Karr and Jonathan P. Geen, of Hardt & Stern, P.C., of Chicago, for appellant Grossinger Motorcorp, Inc.

William H. Kelly, David E. Gordon and Gerald B. Mullin, of Rosenthal & Schanfield, of Chicago, for appellant Ridge Motors, Inc.

Roland W. Burris and James E. Ryan, Attorneys General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Jennifer A. Keller, Assistant Attorney General, of Chicago, of counsel), for intervenor-appellant Secretary of State.

James R. Vogler, Joseph J. Zaknoen and Thomas C. Cronin, of Winston & Strawn, of Chicago (Lisa M. Gibson, of Highland Park, Michigan, of counsel), for appellee Chrysler Corporation.

Richard C. Godfrey, Mark L. Levine and J. Robert Robertson, of Kirkland & Ellis, of Chicago (Louis H. Lindeman, Jr., of Detroit, Michigan, of counsel), for appellee General Motors Corp.

Paul E. Slater and Gregg R. Hague, of Sperling, Slater & Spitz, of Chicago, for appellee Loren Pontiac, Inc.

Julie A. Cardosi, of Springfield, for *amicus curiae* Illinois Automobile Dealers Association.

Dennis M. O'Keefe and Patrick L. Moore, of O'Keefe, Ashenden, Lyons & Ward, of Chicago, for *amicus curiae* Chicago Automobile Trade Association.

J. Timothy Eaton and Ann L. Gibson, of Coffield,

Ungaretti & Harris, of Chicago, for *amicus curiae* American Automobile Manufacturers Association *et al.*

JUSTICE McMORROW delivered the opinion of the court:

In these consolidated direct appeals (134 Ill. 2d R. 302), we are presented with the question of the constitutionality of sections 4(e)(8) and 12(c) of the Motor Vehicle Franchise Act (the Act) (Ill. Rev. Stat. 1989, ch. 121$^1$/$_2$, pars. 754(e)(8), 762(c) (now codified as 815 ILCS 710/4(e)(8), 12(c) (West 1992))). The two judges before whom these now consolidated cases were heard each declared those sections unconstitutional on the bases that they violate the constitutional principles of separation of powers and due process.

### STATUTORY SCHEME

In section 1.1 of the Act, the legislature finds and declares that:

> "the distribution and sale of vehicles within this State vitally affects the general economy of the State and the public interest and welfare, and that in order to promote the public interest and welfare, and in the exercise of its police power, it is necessary to regulate motor vehicle manufacturers *** and *** dealers of motor vehicles doing business in this State in order to prevent frauds, impositions and other abuses upon its citizens, to protect and preserve the investments and properties of the citizens of this State, and to provide adequate and sufficient service to consumers generally." 815 ILCS 710/1.1 (West 1992).

The opening paragraph of section 4 of the Act declares various acts and practices enumerated in that section to be unfair methods of competition and unlawful. (815 ILCS 710/4(a) (West 1992).) The prohibition at issue in this appeal is contained in section 4(e)(8), which states that it is a violation of the Act for a motor vehicle manufacturer:

> "to grant an additional franchise in the relevant mar-

ket area of an existing motor vehicle franchise of the same line make or to relocate an existing motor vehicle dealership within or into the relevant market area of an existing franchise of the same line make. However, if the manufacturer wishes to grant such an additional franchise *** or *** to relocate an existing motor vehicle dealership, then the manufacturer shall give notice in writing to the existing dealer or dealers of the same line make whose relevant market area includes the proposed location of the additional or relocated franchise, at least 60 days prior to the grant or establishment of the additional or relocated franchise. Unless the parties agree upon the grant or establishment of such additional or relocated franchise, the propriety of the granting of such additional franchise shall be determined pursuant to the guidelines of Section 12, with the franchiser having the burden of proof. *** Thereafter, the manufacturer may not establish the additional dealership ***, unless the arbitrators or court have determined that there is good cause for permitting the establishment." 815 ILCS 710/4(e)(8) (West 1992).

We note that section 12 sets forth the same guidelines to be considered by the courts in their determination of what constitutes "good cause" for either the granting of a new franchise or for the relocation of an existing franchise. Section 12(c) provides that in determining whether good cause has been established for establishing or relocating a motor vehicle dealership "the arbitrators or court shall consider all pertinent circumstances which may include but are not limited to" 11 enumerated "good cause" factors, including whether the proposed dealership establishment or relocation would be in the public interest and welfare. 815 ILCS 710/12(c) (West 1992).

## THE PARTIES

### Docket No. 74151

Fields Jeep-Eagle (Fields) is a Chrysler franchisee located in Glenview, Illinois. In July 1991, Chrysler wrote

to Fields advising it that Des Plaines Chrysler-Plymouth Sales, Inc. (Des Plaines), had purchased Town & Country Jeep-Eagle (Town & Country) and would be relocating Town & Country to the Des Plaines facility. Fields objected to the proposed relocation and filed a complaint in the circuit court of Cook County, invoking the Act, to enjoin Chrysler from establishing or relocating Town & Country into Fields' relevant market area. Des Plaines was granted leave to intervene as a defendant. Des Plaines moved to dismiss Fields' complaint on the grounds that the Act was unconstitutional and preempted by Federal antitrust laws. Des Plaines also served the Attorney General with a "notice of claim of unconstitutionality" in accordance with Supreme Court Rule 19 (134 Ill. 2d R. 19). Thereafter, the Secretary of State (the Secretary), through the Attorney General, filed a motion to intervene to defend the constitutionality of the Act. After consideration of the memoranda and arguments in support of the parties' positions, circuit court Judge John Hourihane granted Des Plaines' motion to dismiss, ruling that the Act was unconstitutional as violating the principles of separation of powers and due process. Fields filed a notice of appeal to the appellate court, and the Secretary filed a direct appeal to this court (docketed as No. 74151). Fields' appeal was transferred to this court (docketed as No. 75154), and later consolidated with the Secretary's appeal. Fields and Des Plaines subsequently settled their dispute, and Fields' motion to voluntarily dismiss its appeal with prejudice was granted. The Secretary and Chrysler remain as parties in appeal No. 74151.

### Docket Nos. 75293, 75323, 75358

Grossinger Motorcorp, Inc. (Grossinger), is a Pontiac dealer in Lincolnwood, Illinois. In May 1992, General Motors Corporation (GM) wrote to inform Grossinger of its intent to appoint a new Pontiac dealership, Loren

Pontiac, Inc. (Loren), in Glenview from an "open point" in Winnetka. Grossinger, Ridge Motors, Inc. (Ridge), and Highland Park Motors, Inc., objected to the proposed dealership on the ground that it would be in the same relevant market area as their dealerships, and filed separate suits against GM under the Act. These suits were later consolidated. In September 1992, GM advised the plaintiffs that it was withdrawing its notice of appointment of Loren as a new dealership in Glenview, and that Loren would, instead, commence operations in the Winnetka location. As a result, the parties entered into a settlement agreement pursuant to which the consolidated actions were dismissed with prejudice on October 23, 1992.

Approximately one week later, GM sent a notice of relocation, informing the original plaintiffs of its intent to permit Loren to relocate from Winnetka to the Glenview location. Grossinger and Ridge filed motions to enforce the settlement agreement, and Ridge also filed a motion to vacate the October dismissal and reinstate the case. GM responded that the settlement agreement related only to the appointment of Loren as a new Pontiac dealership but did not preclude any future proposal to move Loren or another Pontiac franchise to Glenview. Thereafter Grossinger and Ridge and Highland Park filed separate complaints against GM under the Act. Loren was granted leave to intervene in the Grossinger and Ridge suits, and the three actions were then consolidated. Loren and GM each served upon the Attorney General a "notice of claim of unconstitutionality," following which the Secretary was granted leave to intervene in the three consolidated cases. Loren and GM filed motions to dismiss asserting that the Act was unconstitutional and that it was preempted by Federal antitrust laws.

On February 1, 1993, circuit court Judge Richard

Curry denied the plaintiffs' motions to vacate the dismissal of their previous suits, finding that the settlement did not preclude GM from proposing a future dealership relocation into Glenview. Following further arguments, the trial judge also orally ruled that the challenged provisions of the Act were unconstitutional as being violative of the principles of separation of powers and due process, and granted the motion to dismiss Ridge's complaint. That ruling was subsequently reduced to a written order. On March 17, 1993, after additional arguments on Grossinger's complaint, the court reaffirmed its February ruling and entered an order dismissing those counts of Grossinger's complaint which were brought pursuant to the Act.

Direct appeals to this court were filed by Ridge (No. 75293), Grossinger (No. 75358) and the Secretary (No. 75323). These appeals were consolidated with each other and with the Secretary's appeal in the Fields' case (No. 74151) against Chrysler. The Illinois Automobile Dealers Association and Chicago Automobile Trade Association were allowed to file an *amicus* brief in support of the dealers, and the American Manufacturers Association and Association of International Automobile Manufacturers, Inc., were granted leave to file an *amicus* brief in support of Chrysler. Highland Park is not a party to these appeals. After oral arguments in this case, Grossinger and General Motors filed a joint motion to dismiss Grossinger's appeal. We now allow that motion.

## ANALYSIS

Chrysler, GM and Loren (appellees) argue that sections 4(e)(8) and 12(c) violate the doctrine of separation of powers expressed in section 1 of article II of the Illinois Constitution, which provides, "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art. II, § 1.) Appellees also contend that

the challenged sections violate the constitutional principle of due process. Specifically, they maintain that the Act impermissibly delegates to the courts the nonjudicial functions of fact finding and also delegates to the courts, from among several competing and conflicting public interest factors stated in the Act, the determination of whether or not a business should be allowed to relocate, and whether that proposed relocation is in the public interest. Appellees argue that, as a result, the courts are improperly required to legislate and formulate public policy. The appellees further contend that the Act prescribes no fixed, objective standards for its application and therefore is void for vagueness. They argue that the vagueness of the Act gives individual judges unbridled discretion in deciding what factors constitute "pertinent circumstances," how to weigh and balance those factors, and leaves those affected by the Act, particularly manufacturers who bear the burden of proving "good cause," without notice as to when dealership relocations are permissible or prohibited.

In defending the constitutionality of the Act, the Secretary and Ridge (appellants) point to the strong presumption that a statute is constitutional and that one who asserts otherwise has the burden of clearly establishing its unconstitutionality. (*People v. Blackorby* (1992), 146 Ill. 2d 307, 318; *Bernier v. Burris* (1986), 113 Ill. 2d 219, 227.) The appellants contend that the legislature neither impermissibly delegated to the courts the nonjudicial function of determining either what is the law or the public interest, nor vested the courts with administrative investigatory powers. They assert that the legislature has determined, and has stated in the Act, what the law is, and merely vests the judiciary with the authority to apply it in individual cases. The appellants also assert that the Act meets the require-

ments of due process. Specifically, they argue that the Act provides adequate notice of what conduct it proscribes and sufficient industry-specific standards to guide the court in the exercise of its authority regarding what constitutes good cause for the establishment or relocation of a motor vehicle dealership.

The circuit court judges agreed with the appellees that sections 4(e)(8) and 12(c) are constitutionally infirm. In granting the motion to dismiss in the Fields' case, the trial judge noted that "the cases which concern themselves with the unconstitutional delegation of legislative powers focus on the delegation of independent fact-finding and investigative functions in order to determine whether the public interest is protected. This is precisely what the Court is asked to do under the Illinois Act." The judge stated that the function of judges is to determine controversies between litigants and that judges "are not adjuncts or advisors, much less investigating instrumentalities of other agencies of government."

In the consolidated cases against Chrysler, GM and Loren, the trial court judge granted the defendants' motion to dismiss on the basis of similar reasoning. He stated, *inter alia,* "Under the Illinois statute, the court is the initial arbiter of the propriety of the challenged relocation. *** Other than the statutory admonition *** 'to consider all pertinent circumstances' *** the court is left to its own devices in finding propriety or lack of propriety in the contemplated relocation." The trial judge stated that courts are not equipped and should not be called upon to make the determinations called for in the Act in the first instance. Rather, the judicial function is one of reviewing decisions of an agency in matters of public policy. Both courts held that the statutory scheme violated the constitutional separation of powers doctrine and was unconstitutionally vague.

On the issue of separation of powers, the appellees rely upon this court's decision in *West End Savings & Loan Association v. Smith* (1959), 16 Ill. 2d 523. In *West End,* National Security Savings and Loan Association filed an application with the Auditor of Public Accounts to move its business to a location which was in proximity to the location of West End Savings and Loan. The Auditor granted National permission to relocate. Pursuant to the applicable statute, West End filed a petition in the circuit court for a trial *de novo* on the matter of National's application to relocate. The circuit court dismissed the petition on the ground that the statute purporting to grant the right to a trial *de novo* was unconstitutional. In affirming that ruling, this court held that a statutory provision for a trial *de novo* on a matter decided by an administrative agency which has the authority to perform functions which are executive in nature violates the separation of powers principle. The court noted that the agency was "vested with discretion to decide various questions in the application or 'execution' of the law which are not judicially cognizable." (*West End,* 16 Ill. 2d at 525.) The court stated that a statute which purports to vest power in a court to make an independent determination of factual issues unlawfully grants the court a power to exercise executive functions. *West End,* 16 Ill. 2d at 525.

The *West End* court explained that the power of the court to determine if administrative findings and orders are lawful and have support in the evidence is not a power to hear new evidence or reweigh the evidence adduced before the administrative agency and, thus, does not transgress constitutional principles. Statutes providing for such procedure merely authorize the court to exercise what is already a part of its function. "It is otherwise, however, when courts are sought to be invested with powers to determine and decide matters

of an executive or legislative character." (*West End*, 16 Ill. 2d at 526.) This court concluded that "[t]he determination of an appropriate location for a savings and loan association, and the appraisal of factors having some bearing upon such matters, are executive in nature [and] cannot be performed by courts, through the medium of trials *de novo*." *West End*, 16 Ill. 2d at 526.

Appellants argue that *West End* stands only for the proposition that a power already conferred upon one branch cannot also be delegated to and exercised by another branch. We do not read *West End* so narrowly. Although the Act before us provides that the court make an initial determination, rather than a *de novo* review of an intermediate agency determination as in *West End*, the effect is the same, *i.e.*, the court is charged with the responsibility of independently and originally appraising and determining the appropriate location for a business, a function which the *West End* court stated, and the court in *Illinois Hospital Service, Inc. v. Gerber* (1960), 18 Ill. 2d 531, repeated, is a nonjudicial one. *Cf. Federal Power Comm'n v. Idaho Power Co.* (1952), 344 U.S. 17, 97 L. Ed. 15, 73 S. Ct. 85 (review of a commission order does not include the power to exercise the administrative function of determining what conditions should attach to a power license); *Keller v. Potomac Electric Power Co.* (1923), 261 U.S. 428, 67 L. Ed. 731, 43 S. Ct. 445 (the determination of what utility rates should be is not a judicial function; the nature of judicial power is to pass on questions of law under laws already in existence; the power to determine what the law should be is a legislative function); *People ex rel. Hartigan v. Illinois Commerce Comm'n* (1987), 117 Ill. 2d 120 (the setting of utility rates is a legislative, not judicial, function; and even if a reviewing court determines that the rates prescribed by the Commission are illegal, the court may not make new rates or direct the Commission to take

specific action); *Krebs v. Thompson* (1944), 387 Ill. 471 (an act purporting to regulate the licensing of professional engineers which vested the examining committee with the unfettered authority to determine to whom it applied, what qualifications were necessary for certification and the means employed to demonstrate those qualifications was void as an unwarranted delegation of legislative authority); *Borreson v. Department of Public Welfare* (1938), 368 Ill. 425; *Brown v. State Department of Old Age Assistance* (1938), 369 Ill. 543 (whether old age assistance should be granted, denied or modified presents no question of law for judicial determination; effectuation of the assistance program established by the Act is essentially an executive function).

The judges in the cases before us also found persuasive *Desert Chrysler-Plymouth v. Chrysler Corp.* (Nev. 1979), 600 P.2d 1189, which appears to be the only other case considering the constitutionality of a statute governing motor vehicle franchises on the basis of the doctrine of separation of powers. Similar to the Illinois Act before us, the Nevada statute required a manufacturer who wished to establish or relocate a dealership into the relevant market area of existing dealerships of the same line make to give notice to the existing dealership of its intention. An existing dealer who opposed the relocation was allowed to apply to the State district court for an injunction to prevent the relocation. The district court was to determine whether there was good cause for the establishment of the additional dealership. Without a judicial finding of good cause, the director of the Department of Motor Vehicles could not issue a license for the additional dealership.

Pursuant to the Nevada statute, Chrysler notified the owners of the other Chrysler-Plymouth dealership within the market area of the proposed additional dealership. The owners filed suit for injunctive relief.

Chrysler moved for partial summary judgment alleging, on various grounds, that the statute was unconstitutional. This motion was granted by the district court. The Nevada Supreme Court, on its own motion, directed the parties to brief the question of whether the statutory scheme was in violation of the separation of powers clause of the Nevada constitution. In ruling on the issue, the court reasoned that since the Director could not issue a license unless the district court made the determination that good cause mandated the additional dealership, the court was, in reality, the licensing entity. Thus, under the statute, the district court was performing a prelicensing, fact-finding function rather than resolving an actual case or controversy. The Nevada Supreme Court held that the legislature could not, using the guise of granting a party the right to seek injunctive relief, require the courts to perform such a nonjudicial function.

The Nevada Supreme Court further held that the determination of "public interest," one of the statutory factors the district court was to consider in determining if good cause existed for the establishment of an additional dealership, should not have been delegated to the courts, because "[t]hey are not equipped to independently investigate the facts in order to assure that the general public interest is protected." (*Desert Chrysler-Plymouth*, 600 P.2d at 1191.) The court noted that in most of the States which have enacted legislation regulating automobile franchises, the legislatures assigned the task of administering the legislation to an administrative board or agency. *Desert Chrysler-Plymouth*, 600 P.2d at 1191 n.4.

We note that after the *Desert Chrysler-Plymouth* decision, the Nevada statute was revised. It now provides for the Director of the Department of Motor Vehicles, who is required to have training and expertise in the

administration of laws regarding motor vehicles (Nev. Rev. Stat. § 481.035 (1993)), to conduct a hearing at which the objecting dealer has the burden of establishing that there is good cause for preventing the intended dealership relocation. Nev. Rev. Stat. § 482.36363 (1993).

Appellants claim that unlike the Nevada statute declared unconstitutional in *Desert Chrysler-Plymouth*, our Act does not require the judiciary to act as licensing entity or to undertake an independent prelicensing, fact-finding function. We disagree. Although the Illinois statutory scheme makes no reference to the granting or denial of a license on the basis of the court's ruling on the issue of "good cause," the Illinois Act has the same effect as the Nevada statute. In Illinois, all motor vehicle dealerships must be licensed by the Secretary of State (625 ILCS 5/5—101 (West 1992)) and no person shall be licensed unless the applicant is authorized by a contract in writing between the applicant and the manufacturer to sell new motor vehicles and has an established place of business (625 ILCS 5/5—101(d) (West 1992)). If the court rules that good cause does not exist to allow the establishment or relocation of a dealership at a particular location, the prospective dealership is precluded from entering into a franchise agreement to sell vehicles at the proposed location. Consequently, a ruling which is adverse to the proposed relocation precludes the dealer from obtaining a license from the Secretary to do business in the disallowed location. As noted by the trial judge in the Fields case, the absence of any reference to licensing in the Illinois statute is a distinction without a difference. Under either statute, the court's ruling is determinative of the ultimate question of whether a business may become licensed to operate at a given location.

Similarly, we find no merit in appellants' argument that courts are not required by the Act to engage in in-

dependent fact finding, but rather are merely called upon to apply the law that dealership relocations are unlawful unless good cause for an exception is shown by the manufacturer. By its very terms, the Act directs the court to inquire into any circumstances the court deems are pertinent to whether there is good cause for the establishment or relocation of a dealership. Matters which the court *may* inquire into and consider include: whether the allowance of the proposed franchise is warranted by economic and marketing conditions, including anticipated future changes; a comparison of the amount of sales and service business transacted with the amount of business available in the relevant market area; the investments made and obligations incurred by the existing dealers in that area; the permanency of the objecting dealers' investments; whether the objecting dealers are providing adequate competition for consumers; whether the objecting dealers have adequate facilities, parts and qualified personnel to reasonably and conveniently serve the needs of customers; whether the objecting dealer has engaged in fraud or other misconduct which has had a substantially detrimental effect upon the sales and service of the manufacturer's vehicles; and the effect of an additional dealership upon existing dealers. The answers to these questions, several of which are subjective and/or speculative in nature and involve competing public and private interests, require judicial assessment of numerous economic, demographic, business, and industry related issues rather than the application of any fixed standards or rules of law to a set of facts, which if they existed, would allow or not allow the dealership relocation.

Moreover, a court is not mandated by the statute to consider all or any of the enumerated factors but may, instead or in addition, *sua sponte* raise and consider whatever factors and circumstances which it believes

are or may be pertinent to the question of whether there is good cause to allow a particular dealership relocation. In contrast to the majority of State statutes which provide for a single administrative agency or board to hear and decide the merits of protests against the establishment or relocation of additional dealerships in a particular area, under the Illinois Act individual judges throughout the State have independent and virtually unrestrained discretion to decide what constitutes good cause, or the lack of good cause, to allow or disallow the proposed dealership. The independent determination of what facts are pertinent and the assessment of those facts as they bear upon whether a business should be allowed to operate at a given location are not functions which courts are generally equipped to perform or with which they should be burdened under the guise of granting or denying injunctive relief.

Finally, the Act calls upon the judiciary to determine whether the proposed relocation of a dealership would be beneficial or injurious to the public welfare (815 ILCS 710/12(c)(5) (West 1992)) and in the public interest (815 ILCS 710/12(c)(8) (West 1992)). Section 12 does not, however, identify what is in the public welfare or what the public interest is. Assuming that these determinations are interrelated to the other considerations enumerated in section 12(c) and further assuming that a court considers only those factors, the court must still independently decide how much weight to give each factor and how the various competing interests reflected therein should be balanced against each other in order to decide what, in the court's opinion, is in the public interest and welfare. As noted above, some of the factors set forth in section 12(c) reflect concern for the economic viability of the dealerships, others pertain to the manufacturers' interests in promoting and selling their lines of vehicles through solvent, honest and competent

dealerships, while others relate to the protection of consumers by promoting adequate competition and customer convenience in matters relating to price and service.

In addition, the legislature has declared in section 1.1 that "it is necessary to regulate motor vehicle manufacturers \*\*\* and \*\*\* dealers of motor vehicles doing business in this State in order to prevent frauds, impositions and other abuses upon its citizens, to protect and preserve the investments and properties of the citizens of this State, and to provide adequate and sufficient service to consumers generally." (815 ILCS 710/1.1 (West 1992).) The several statutory purposes and goals stated in this section are consistent with neither each other nor with various of the competing interests expressed in section 12(c). Protecting the private economic interests of dealers in their dealership investments and properties may, for example, militate against the allowance of an additional dealership and thereby frustrate the goal of protecting consumer interests by ensuring competition and convenience for consumers. Conversely, the allowance of an additional dealership which has the capability of offering lower prices and better service than an existing dealership may benefit consumers but result in a loss of business or even the entire investment of the existing dealer.

Thus, contrary to the Secretary's assertion, the Act does not merely require a court to consider "the public interest" since the Act does not state or identify what the overall or ultimate public interest is. Instead, the Act delegates to individual judges the task of independently deciding what the public interest is in each case, and permits those decisions to be based upon whatever factors the judges consider pertinent, in addition to the competing public and private interests expressed in the Act. However, the authority to determine public interest

is vested in the legislature and cannot permissibly be delegated to the judiciary. See, *e.g, United States v. Crocker-Anglo National Bank* (N.D. Cal. 1966), 263 F. Supp. 125 (courts cannot be vested with the power to make an original and independent determination of the convenience and needs of the community to be served by a proposed bank merger or whether such merger is in the public interest; that is plainly and unquestionably a legislative or administrative determination), citing, *inter alia, United States v. Philadelphia National Bank* (1963), 374 U.S. 321, 10 L. Ed. 2d 915, 83 S. Ct. 1715 (the determination of whether the effects of an anticompetitive bank merger are outweighed by other social and economic benefits is a value choice beyond the ordinary limits of judicial competence); *Chemical Bank & Trust Co. v. Falkner* (Tex. 1963), 369 S.W. 2d 427 (a determination of the public necessity in connection with issuing bank charters involves a determination of public policy, which is a matter of legislative discretion and cannot constitutionally be given to the judiciary).

For the foregoing reasons, we hold that through sections 4(e)(8) and 12(c) of the Act, the General Assembly has impermissibly delegated for judicial examination matters which are for legislative or administrative determination. We hold that this impermissible delegation violates the separation of powers clause of the Illinois Constitution. Having concluded that sections 4(e)(8) and 12(c) of the Act unconstitutionally delegate nonjudicial functions to the judiciary in violation of the doctrine of separation of powers, we need not separately address the question of whether section 12(c) is also unconstitutionally vague on its face. We recognize the interest of the State in regulating the dealings of motor vehicle manufacturers and dealers so as to redress the disparity in economic and bargaining power between

manufacturers and their franchisees (see *New Motor Vehicle Board of California v. Orrin W. Fox Co.* (1978), 439 U.S. 96, 112, 58 L. Ed. 2d 361, 377, 99 S. Ct. 403, 413 (Marshall, J., concurring)). We are aware that numerous States have enacted regulatory legislation which requires adjudication of whether to allow the establishment or relocation of a motor vehicle dealership based upon some of the same or similar factors as those set out in section 12(c) (see, *e.g., Piano v. State of California New Motor Vehicle Board* (1980), 103 Cal. App. 3d 412, 163 Cal. Rptr. 41). In the cases before us, we simply conclude that the investigation into and weighing of the statutory and nonstatutory factors in order to decide whether a dealership should be established or relocated, and what the public interest and welfare is in each case involving a proposed dealership, are not functions which courts are equipped to perform nor which the legislature may constitutionally require them to perform.

The circuit court judgments holding unconstitutional sections 4(e)(8) and 12(c) of the Motor Vehicle Franchise Act are affirmed.

*Affirmed.*

JUSTICE HARRISON, dissenting:

The Illinois Constitution provides that the legislative, executive, and judicial branches are separate and that no branch shall "exercise powers properly belonging to another." (Ill. Const. 1970, art. II, § 1.) This provision does not forbid every exercise by one branch of government of functions that are conventionally exercised by another branch. Rather, the thrust of the separation of powers philosophy " 'is that each department of government must be kept free from the control or coercive influence of the other departments.' " *City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 175, quoting 1 F. Cooper, State Administrative Law 16 (1965).

Consistent with this philosophy, we have held that the separation of powers created by our constitution is designed to prevent one branch of government from " 'arrogat[ing] to itself any control over either one of the other [branches] in matters which have been solely confided by the constitution to such other [branch].' " (*People ex rel. Hansen v. Phelan* (1994), 158 Ill. 2d 445, 451, quoting *Fergus v. Marks* (1926), 321 Ill. 510, 514.) Accordingly, the doctrine comes into play when one branch seeks to exert a substantial power belonging to another. (*People v. O'Donnell* (1987), 116 Ill. 2d 517, 527.) The judiciary, for example, may not usurp or encroach upon the legislature's powers or the legislative function. (*American Telephone & Telegraph Co. v. Village of Arlington Heights* (1993), 156 Ill. 2d 399, 420 (Bilandic, J., dissenting).) Conversely, the General Assembly is prohibited from enacting legislation that encroaches upon the inherent powers of the judiciary. *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 59.

In the case before us, none of these concerns are present. There is no encroachment by one branch of government upon the powers of another. If anything, the legislation at issue here operates only to confer power on the judiciary. It takes nothing away from it.

The right of the General Assembly to cede authority to other branches of government is not without limitation. The power to make the laws for this State is vested in the legislature alone. (Ill. Const. 1970, art. IV, § 1.) Our court has long recognized, both as a matter of common law and constitutional law, that the General Assembly cannot delegate to any other body, authority or person its general legislative power to determine what the law shall be. (*People v. Tibbitts* (1973), 56 Ill. 2d 56, 58-59; *Hill v. Relyea* (1966), 34 Ill. 2d 552, 555.) Under the statute at issue here, however, that has not been done. The Motor Vehicle Franchise Act merely

grants to the courts responsibility for applying facts adduced by the parties to legal standards promulgated by the General Assembly. This is a quintessential judicial function. *People ex rel. Royal v. Cain* (1951), 410 Ill. 39, 49.

Ultimately, the majority rules as it does on the theory that the "good cause" standard created by the statute is too ill-defined to withstand constitutional scrutiny. This contention is untenable. Although a law vesting discretionary power in administrative officials may be void as an unlawful delegation of legislative power if it does not properly define the terms under which discretion is to be exercised (*Krol v. County of Will* (1968), 38 Ill. 2d 587, 593), the legislature may delegate authority "if the authority thus granted is delimited by intelligible standards" (*Hoogasian v. Regional Transportation Authority* (1974), 58 Ill. 2d 117, 130).

The preciseness of the standards required depends on the complexity of the subject matter and the ultimate objective of the act in question. (*Hoogasian,* 58 Ill. 2d at 130.) In the situation before us here, it is difficult to see how any greater specificity would be practical or why it would be necessary. We are dealing, after all, not with decisionmaking by administrative agencies, but with the judgment of courts. "Good cause" is a matter which our courts are routinely called upon to assess in a wide variety of contexts. See, *e.g.*, 705 ILCS 405/2—4 (West 1992); 735 ILCS 5/15—1701(b)(1), (b)(2) (West 1992); 755 ILCS 5/28—4(a)(1) (West 1992); 820 ILCS 405/601(A) (West 1992); 134 Ill. 2d Rules 104(c), 105(a), 183, 201(d), 224(b), 306(e), 306(f), 311, 343(c), 374(a), 609(b), 609(c), 776(c); 145 Ill. 2d Rules 222(c), 713(h).

Although these examples provide no specific guidelines for determining when "good cause" has been shown, application of the law has not been overly difficult. I therefore fail to share the concerns expressed

by my colleagues here. In contrast to the examples I have just cited, section 12(c) of the Act (815 ILCS 710/12(c) (West 1992)) is a model of precision. It delineates no fewer than 11 separate factors that may be taken into account in assessing whether "good cause" exists. Although this list is neither exclusive nor binding, it cannot be without unduly restricting the ability of the courts to make a fair assessment based on the particular circumstances in a given case. Flexibility gives vitality to this statute. It does not render it invalid.

Among the statutory factors a court may consider in determining "good cause" are whether the proposed action by the franchiser would be injurious to "the public welfare" (815 ILCS 710/12(c)(5) (West 1992)) and whether it would be in "the public interest" (815 ILCS 710/12(c)(8) (West 1992)). The majority objects to these provisions on the grounds that they involve the determination of public policy. This renders the statutory scheme invalid, according to my colleagues, because the determination of public policy is a matter within the exclusive domain of the legislature. Such is not the case.

Although the majority has located precedent from other jurisdictions to support its position (163 Ill. 2d at 478-79), the law in Illinois is to the contrary. Here, courts are unquestionably involved in determining public policy. That this is so is demonstrated by our consistent recognition that public policy is reflected not only in the constitution and statutes of this State, but in its judicial opinions as well. *O'Hara v. Ahlgren, Blumenfeld & Kempster* (1989), 127 Ill. 2d 333, 341.

Stated generally, "public policy" is a legal principle that holds that "no one may lawfully do that which has a tendency to injure the public welfare." (*O'Hara*, 127 Ill. 2d at 341.) The courts identify and weigh public policy considerations whenever they are asked to recognize a new cause of action. (See, *e.g., Kelsay v. Motorola,*

*Inc.* (1978), 74 Ill. 2d 172, 181-85; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 619.) Similarly, the question of whether a contract, agreement or award offends public policy is a matter that the courts routinely address. See, *e.g., O'Hara,* 127 Ill. 2d at 341-47; *American Federation of State, County & Municipal Employees v. State* (1988), 124 Ill. 2d 246, 259-65; *Laughlin v. France* (1993), 241 Ill. App. 3d 185, 197; *In re Estate of Braun* (1991), 222 Ill. App. 3d 178, 182-83.

There is nothing unique about car dealerships that requires different treatment here. The determination as to whether a proposed change in dealerships contravenes public policy may depend on the peculiar facts and circumstances of the case, and it may require an assessment of whether the public interest would be harmed, but that is so whenever a contract or agreement is challenged on the grounds that it contravenes public policy. (*O'Hara,* 127 Ill. 2d at 341-42.) If the courts are capable of assessing public policy and the public interest in those other situations, I fail to see why they cannot do so here. The task may not be an easy one, but that is scarcely justification for nullifying a presumptively valid legislative enactment. The judgments of the circuit courts should therefore be reversed.

JUSTICE NICKELS joins in this dissent.