**TLMS MOTOR CORP., an Illinois Corporation, Rand J. Peterson, Alf McConnell and William Madison, Plaintiffs,**

v.

**TOYOTA MOTOR DISTRIBUTORS, INC., Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Credit Corporation, Defendants.**

No. 95 C 1180.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 18, 1995.

Harold E. Collins, Michael Raymond Collins, Ann M. Morrone, Collins & Collins, Chicago, IL, for plaintiffs.

William J. Gibbons, Christian B. McGrath, Philip Jonathan Perry, Latham & Watkins, Chicago, IL, for Toyota Motor Distributors, Inc., Toyota Motor Sales U.S.A., Inc.

Alan Warren Brothers, Cheryl J. Colston, Carney & Brothers, Ltd., Chicago, IL, for Toyota Motor Credit Corp.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiffs TLMS Motor Corporation ("TLMS"), Rand J. Peterson, Alf McConnell, and William Madison bring this five-count complaint against Toyota Motor Distributors ("Toyota Distributors"), Toyota Motor Sales ("Toyota Sales"), and Toyota Motor Credit Corporation ("Toyota Credit"). Presently before this court is Defendant Toyota Credit's motion to dismiss Counts I, III, and V. For the reasons set forth below, Toyota Credit's motion is granted in part and denied in part.[1]

### I. Background

Plaintiffs allege that from November 1990 to November 1991 they negotiated with Craig Bernard, the owner of a Toyota, Lincoln–Mercury, Subaru dealership in Waukegan, Illinois, for the sale of his franchise.[2] In order to induce Plaintiffs to purchase the dealership, Defendants are alleged to have:

> artificially manipulated TLMS'[s] pro formas to meet Toyota's technical capitalization requirements. Defendants at all times harbored the intent to coerce TLMS and its principals into providing additional capital funds and guaranties for the Dealership shortly after the closing of the transaction with Bernard.

Complaint ¶ 11. Plaintiffs allege that Defendants misrepresented the number, cost, and financing of vehicles that would be made available to TLMS, in addition to the capitalization and guarantee requirements of the dealership. *Id.* ¶¶ 13–14. Plaintiffs also claim that Defendants altered historical and projected expenses of the dealership in order to persuade TLMS and the individual investors to purchase the operation. *Id.* ¶ 13.

Soon after TLMS purchased the dealership from Bernard in 1991, Plaintiffs began investigating ways to expand TLMS's credit limit with Toyota Credit. Toyota Distributors and Toyota Sales allegedly represented to TLMS that Toyota Credit would exceed the $1.5 million line of credit so long as Plaintiffs remained "in trust." *Id.* ¶ 17. Although Toyota Credit did extend TLMS's credit line to over $2 million in February 1991, Plaintiffs allege that in April 1992 Toyota Credit placed a "finance hold" on TLMS, notwithstanding TLMS's better than expected sales performance. This finance hold prevented TLMS from receiving any new deliveries of Toyota vehicles during the peak car sales season, and Plaintiffs contend that the hold was imposed to coerce plaintiff McConnell into investing more money into the dealership and signing a personal guarantee. *Id.* ¶¶ 17–18. In addition, Plaintiffs allege that Toyota Distributors and Toyota Sales threatened to force a sale of the franchise if McConnell did not accede to their demands, and that Toyota Credit frustrated attempts by TLMS to secure additional credit from the First Colonial Bank of Lake County. *Id.* ¶¶ 18–22, 24–29. As a consequence of this concerted effort against TLMS, Plaintiff's allege that the franchise lost sales and eventually had to be sold at liquidation value.

Plaintiffs then brought suit against the various Defendants under the Illinois Motor Vehicle Franchise Act ("MVFA"), 815 ILCS 710/1–710/14 (West 1993 & Supp.1995) (Count I), the Franchise Disclosure Act, 815 ILCS 705/1–705/44 (West 1993) (Count II),

---

**1.** We note that although Plaintiffs' response to the instant motion is signed by Chandramathi Hanumadass, this attorney has not entered an appearance. Plaintiffs' counsel are reminded to faithfully comply with the obligations of Fed. R.Civ.P. 11(a) in all further submissions to this court.

**2.** Plaintiffs claim that during this same period Bernard was speaking to another group of poten-

tial buyers, but that Defendants disapproved of this second group of purchasers because of their race. Consequently, Plaintiffs assert, the defendants rejected the proposed sale of the franchise to this other group and pushed for a deal with the plaintiffs. However, these allegations of racial animus are irrelevant to the disposition of the instant motion.

the Automobile Dealers Day in Court Act ("ADDCA"), 15 U.S.C. §§ 1221–1225 (Count III), breach of the covenant of good faith and fair dealing (Count IV), and common law fraud (Count V). Defendant Toyota Credit now moves to dismiss Counts I, III, and V.

## II. Motion to Dismiss Standard

■ A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Chaney v. Suburban Bus Div. of the Regional Transp. Auth.*, 52 F.3d 623, 627 (7th Cir. 1995). At this stage in the litigation we take as true all factual allegations made in the complaint, and construe all reasonable inferences therefrom in the plaintiff's favor. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir.1995).

## III. Discussion

### A. Count I (MVFA)

Toyota Credit contends that it does not fit within any of the provisions of the MVFA, and thus Count I against it should be dismissed. In their complaint Plaintiffs contend that by misrepresenting TLMS's credit line, placing a finance hold on TLMS's credit, coercing McConnell into putting up additional capital and a personal guarantee, and interfering with TLMS's ability to secure a loan from First Colonial, Toyota Credit violated 815 ILCS 710/4(b), (e)(5) and 815 ILCS 710/7. We therefore must analyze these sections to determine whether the defendant's alleged conduct falls within their purview.

■ The MVFA, first enacted in 1979, is intended to "prevent frauds, impositions and other abuses upon [Illinois] citizens, to protect and preserve the investments and

properties of the citizens of [Illinois], and to provide adequate and sufficient service to consumers generally" in the distribution and sale of motor vehicles. 815 ILCS 710/1.1; *Fields Jeep–Eagle, Inc. v. Chrysler Corp.*, 163 Ill.2d 462, 206 Ill.Dec. 694, 700, 645 N.E.2d 946, 953 (1994).[3] Section 4(b) prohibits any arbitrary or bad faith act against a franchisee by "any manufacturer, factory branch, factory representative, distributor or wholesaler, distributor branch, distributor representative or motor vehicle dealer." Section 4(e)(5) prohibits interference by "a manufacturer, a distributor, a wholesaler, a distributor branch or division or officer, agent or other representative thereof" in the capital structure or financing of a motor vehicle dealership. Finally, Section 7 prevents the imposition of "unreasonable restrictions" in determining whether a dealership has complied with "subjective standards." "In construing a statute, a court must ascertain and give effect to the legislature's intent in enacting the statute." *Collins v. Board of Trustees of Firemen's Annuity & Ben. Fund of Chicago*, 155 Ill.2d 103, 183 Ill.Dec. 6, 9, 610 N.E.2d 1250, 1253 (1993). The best indication of this intent is, of course, the language of the statute itself. *Toner v. Retirement Bd. of Policemen's Annuity & Ben. Fund of Chicago*, 259 Ill.App.3d 67, 197 Ill.Dec. 39, 41, 630 N.E.2d 1163, 1165 (1994).

■ Toyota Credit contends that because it is neither a manufacturer, a distributor, nor a wholesaler, it does not fall under any of the cited provisions of the MVFA. We agree in part. Clearly, Toyota Credit does not fall within any of the categories of persons listed in 710/4(b), and thus it cannot be liable under that provision.[4] However, by its terms 710/4(e)(5) applies not only to manufacturers, distributors and wholesalers, but also to an "agent or other representative thereof." Plaintiffs contend that Toyota Credit, in concert with Toyota Sales and Toyota Distribu-

---

**3.** We note that although sections 4(e)(8) and 12(c) of the MVFA were found to violate the Illinois Constitution in *Fields Jeep–Eagle*, 206 Ill. Dec. at 702, 645 N.E.2d at 954, that decision did not alter the validity of the specific provisions at issue in this case.

**4.** Plaintiffs argue that 710/4(b) nonetheless applies because 710/3 states that the MVFA applies

to "[a]ny person who engages directly or indirectly in purposeful contacts within this State." However, it is clear from the language of 710/3 that it merely defines the jurisdictional reach of the statute. Plaintiffs' proposed reading of 710/3 would render superfluous the specific enumeration of potentially liable persons in 710/4(e), and thus we decline to adopt their interpretation.

tors, acted to coerce one of the individual plaintiffs into altering the capital structure and financing of the dealership. Complaint ¶¶ 11, 17–18, 28. Moreover, we cannot at this early stage discern whether Toyota Credit was actually an "agent or other representative" of Toyota Distributors or Toyota Sales, since that question is often one for the finder of fact. *See Wabash Indep. Oil Co. v. King & Wills Ins. Agency,* 248 Ill.App.3d 719, 188 Ill.Dec. 644, 647, 618 N.E.2d 1214, 1217, *appeal denied,* 153 Ill.2d 570, 191 Ill. Dec. 630, 624 N.E.2d 818 (1993). In addition, Toyota Credit's argument has no applicability to 710/7, since that section is not limited to manufacturers, distributors and wholesalers, but applies to anyone who "directly or indirectly [ ] impose[s] unreasonable restrictions on the motor vehicle dealer or franchisee." Accordingly, Toyota Credit's motion to dismiss Count I is granted to the extent Plaintiffs seek to bring a claim under 710/4(b), and denied in all other respects.

### B. Count III (ADDCA)

Toyota Credit raises two arguments in support of its motion to dismiss Count III brought under the ADDCA—a federal act which authorizes automobile dealers to bring suit against "any automobile manufacturer" who has failed "to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise." 15 U.S.C. § 1222. Toyota Credit first contends that the ADDCA does not apply because Toyota Credit was not a signatory to the franchise agreement between TLMS and Toyota Distributors. In addition, Defendant argues that because it is not an "automobile manufacturer" it is not subject to the ADDCA. We find both of these arguments unpersuasive.

■ In support of its first attack on Count III, Toyota Credit cites *Lawrence Chrysler Plymouth, Inc. v. Chrysler Corp.,* 461 F.2d 608, 613 (7th Cir.), *cert. denied,* 409 U.S. 981, 93 S.Ct. 317, 34 L.Ed.2d 245 (1972), for the proposition that the ADDCA applies only to those who are parties to the franchise agree-

ment at issue. However, the court in *Lawrence* did not hold that only signatories can be held liable under the ADDCA; rather, the court quoted the following passage from *York Chrysler–Plymouth, Inc. v. Chrysler Credit Corp.,* 447 F.2d 786, 791 (5th Cir.1971):

> [T]here being no showing that would make either [defendant] *responsible for the acts of the other on an agency theory,* and the facts indicating that they are separate legal entities each operating in its own sphere, only the one which has entered into a franchise agreement could be held accountable for performing or complying with it.

(emphasis added). This language suggests that if an agency relationship exists between a signatory and a non-signatory, the latter may still be held responsible under the ADDCA even though it is not a party to the franchise agreement. Quite properly, then, Judge Bua in *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 550 F.Supp. 1199, 1202 (N.D.Ill.1982), construed *Lawrence* as not precluding the imposition of ADDCA liability on a non-signatory, but merely "set[ting] forth the proof required for a finding of liability against such a party." We find this reading of *Lawrence* persuasive, and accordingly adopt it here. As discussed above, Plaintiffs have alleged that Toyota Credit acted in concert with, and on behalf of, Toyota Distributors, a signatory to the franchise agreement. These allegations are sufficient to preclude us from of determining that no agency relationship existed. Accordingly, Count III should not be dismissed at this point simply because Toyota Credit was not a signatory to the franchise agreement.

■ Defendant also maintains that dismissal is appropriate because the ADDCA only applies to automobile manufacturers. The ADDCA defines the term automobile manufacturer as:

> any person, partnership, corporation, association, or other form of business enterprise engaged in the manufacturing or assembling of passenger cars ... including any person, partnership, or corporation which *acts for and is under the control of such manufacturer or assembler* in con-

nection with the distribution of said automotive vehicles.

15 U.S.C. § 1221(a) (emphasis added). Not surprisingly, given this broad definition, the term has been construed to include subsidiaries of manufacturers that facilitate the distribution and sale of automobiles. Thus, in *Colonial Ford, Inc. v. Ford Motor Co.*, 592 F.2d 1126, 1129 (10th Cir.), *cert. denied*, 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979), the Tenth Circuit held that Ford Motor Credit Company was subject to the ADDCA because it "was a wholly owned subsidiary of Ford Motor and [ ] its involvement with [the plaintiff] was exclusively for the purpose of facilitating the distribution of automobiles manufactured by its parent." Similarly, the court in *DeValk* refused to dismiss an ADDCA claim against Ford Motor Credit Company because the plaintiff alleged that the company provided financing to facilitate the sale of Ford manufactured automobiles at the dealership. 550 F.Supp. at 1202; *see also Stepp v. Ford Motor Credit Co.*, 623 F.Supp. 583, 589 (E.D.Wis.1985) (same). In the instant case, Plaintiffs allege that Toyota Credit is the financing arm of Toyota Distributors and Toyota Sales, and that it facilitated the sale of Toyota vehicles at TLMS. Accordingly, as these allegations are sufficient to raise the inference of an agency relationship under the ADDCA, Toyota Credit's motion to dismiss Count III is denied.

### C. Count V (Common Law Fraud)

█ Finally, Toyota Credit moves to dismiss Count V on the ground that Plaintiffs have failed to allege fraud with the particularity required by Fed.R.Civ.P. 9(b). To plead a claim of common law fraud, a plaintiff must allege: "(1) a false statement of material fact; (2) knowledge or belief by the maker that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance." *Lagen v. Balcor Co.*, 274 Ill.App.3d 11, 210 Ill.Dec. 773, 777, 653 N.E.2d 968, 972 (1995). Although Rule 9(b) does not require the pleading of facts which demonstrate that the alleged misrepresentation is false, "it does require the plaintiff to state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir.1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992)). Where the plaintiff alleges that multiple defendants committed a fraud, the complaint may not simply lump all the defendants together, but must specify which defendant committed which allegedly fraudulent act. *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir.1994); *see also Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1329 (7th Cir.1994) ("[D]efendants are entitled to be apprised of the roles they each played in the alleged scheme, and absent a compelling reason, a plaintiff is normally not entitled to treat multiple corporate defendants as one entity.").

█ Here, Plaintiffs have failed to allege that Toyota Credit made any specific misrepresentations upon which they relied to their detriment. Plaintiffs either attribute misrepresentations to Toyota Distributors or Toyota Sales, *e.g.*, Complaint ¶¶ 17, or lump all the defendants together, *e.g.*, *id.* ¶ 14. Although at one point Plaintiffs do allege that Toyota Credit "initially represented" that it would not need a guarantee from McConnell, *id.* ¶ 27, this allegation is woefully inadequate to apprise Toyota Credit of the "what, when, and where" of the alleged fraud, or to allow us to determine if the alleged misrepresentation is actionable. Accordingly, as Plaintiffs have failed to allege Toyota Credit's role in the purported fraud with sufficient particularity, Count V against Toyota Credit is dismissed.

### IV. Conclusion

For the reasons set forth above, Toyota Credit's motion to dismiss is granted in part and denied in part with regard to Counts I and III, and granted with respect to Count V. It is so ordered.